[No. 8281.  Department Two.  February 2, 1910.]

THE CITY OF SPOKANE, *Respondent*, v. JOHN F. COSTELLO
*et al.*, *Appellants*.[1]

MUNICIPAL CORPORATIONS—CONTRACTS—ULTRA VIRES—ESTOPPEL TO
PLEAD.  Neither the sureties nor a city contractor, who was paid for
defective work upon his giving bonds to repair and complete the
work, can interpose the plea of *ultra vires* to escape liability on the
bonds, where the giving was not prohibited by law.

ESTOPPEL—PLEADING—SUFFICIENCY.  An estoppel is sufficiently
pleaded where the facts constituting it are all set forth, although
the pleading fails to state the conclusion that the facts constitute an
estoppel.

PARTIES—BONDS.  Under Rem. & Bal. Code, § 192, a contractor and
the surety on his bond may be joined as parties defendant in an
action on the bond.

EXECUTORS AND ADMINISTRATORS — ACTIONS — PARTIES—JOINDER—
BONDS.  The administrator of a deceased contractor, the principal on
a bond, may, on rejection of the claim, be joined as a party defend-
ant with the surety in an action on the bond; the proceedings for
presenting claims against the estate and payment of judgments in
course of administration making no difference in the nature of
actions against administrators.

SAME—JUDGMENT AGAINST ADMINISTRATOR—FORM.  A judgment
against an administrator should contain directions for its payment
in course of administration, as required by Rem. & Bal. Code, § 1483,
but failure to do so is not ground for reversal, where it can be so
understood, or amended on appeal.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered May 18, 1908, upon find-
ings in favor of the plaintiff, after a trial on the merits
before the court without a jury, in an action on a contractor's
bonds.  Affirmed.

*Hurn & Curtiss* and *Danson & Williams*, for appellants.

*E. O. Connor, John E. Blair*, and *Ernest E. Sargeant*, for
respondent.

[1]Reported in 106 Pac. 764.

PARKER, J.—This is an appeal from a judgment rendered against defendants in an action upon two bonds. One is in words and figures as follows:

"Know all men by these presents, that Peter Costello, as principal, and the Fidelity & Deposit Company of Maryland, a corporation as surety, are held and firmly bound unto the City of Spokane, Washington, in the sum of Twelve Hundred ($1200.00) Dollars, lawful money of the United States, for the payment of which well and truly to be made, we bind ourselves, our (and in the case of said principal) heirs, executors, administrators and assigns, and (in the case of said surety) successors and assigns, jointly and severally, firmly by these presents.

"Signed and sealed and dated this 18th day of November, 1905.

"The condition of the above obligation is such, that,

"WHEREAS, the above bounden principal has this day completed a certain contract with the City of Spokane for the grading, curbing, parking and sidewalking of Third avenue from Regal to Sherman Streets, which contract amounted to the sum of Fourteen Thousand Eight Hundred ($14,800) Dollars, and whereas, in the opinion of the City Engineer certain portions of the sidewalk on said Avenue had been frozen to some extent and may need replacing.

"Now, therefore, if the said principal shall at any time within nine (9) months from the date hereof replace such portions of said sidewalk on said Avenue as may be now damaged by freezing, then this obligation to be void, otherwise to remain in full force and effect.

                    "Peter Costello.
                    "Fidelity & Deposit Co., of Maryland,
                    "By R. J. Danson, Its Attorney in Fact.
                        "Seal attached.
                "ATTEST: W. S. McCrea, General Agent.

"I have examined the foregoing bond and find that the same has been properly and legally executed and is in accordance with the provisions of the charter and ordinances of the City of Spokane.

                "Lester P. Edge, Ass't Corporation Counsel.
"Approved, Floyd L. Daggett, Mayor."

The other bond is the same, except it is for the sum of

$1,000 and relates to a similar improvement of Fourth avenue under a contract for $9,000. The facts necessary for us to notice were found by the trial court in substance as follows: On April 18, 1905, the city entered into a contract with Peter Costello whereby he was to furnish all the work and material for the improvement (including sidewalk) of Third avenue, the city agreeing to pay him therefor the sum of $14,890. Costello thereupon constructed the improvement. Prior to the acceptance and approval of the work by the board of public works, 2,400 lineal feet of the cement sidewalk was frozen during the progress of the work, and thereby rendered defective, and the board of public works refused to approve and accept the improvement. Costello then offered that if the city would pay him the amount due upon the contract, he would enter into a bond with the city, with surety, in the sum of $1,200, conditioned that he would, within nine months from November 18, 1905, replace such portion of the sidewalk as had been damaged by freezing. Thereupon the bond was executed and delivered to the city, when it paid Costello the amount due upon the contract. Costello did not replace, or cause to be replaced, the portion of the sidewalk so frozen and rendered defective, within the nine months, or at all, though requested by the city to do so through its board of public works. During October, 1906, the city replaced and repaired so much of the sidewalk as had been frozen and rendered defective, at an expense to it of $1,245.73.

On April 18, 1905, the city entered into another contract with Peter Costello, whereby he was to furnish all the work and material for the improvement (including sidewalk) of Fourth avenue, the city agreeing to pay him therefor the sum of $9,000. Costello thereupon constructed the improvement. Prior to the acceptance and approval of the work by the board of public works, 1,902 lineal feet of the cement sidewalk was frozen during the progress of the work, and thereby rendered defective, and the board of public works

refused to accept the improvement. Thereupon, the same arrangement for furnishing bond in the sum of $1,000 to repair the walk within nine months was made between Costello and the city, the bond was executed and delivered to the city, and the city paid Costello the amount due upon the contract. Costello did not replace, or cause to be replaced, the portion of the sidewalk so frozen and rendered defective, within the nine months, or at all, though requested so to do by the city through its board of public works. During September and October, 1906, the city replaced and repaired so much of the sidewalk as had been frozen and rendered defective, at an expense to it of $865.56.

Peter Costello having died before the commencement of this action, it was brought against the administrator of his estate and his surety upon the bonds. Judgment was rendered in favor of the city against the administrator and surety for $2,065.56, being the full amount of the $1,200 bond and the $865.56 expense incurred by the city under the $1,000 bond.

It is contended that the evidence was not sufficient to support the findings, especially as to the amount of damages sustained by the city. A careful reading of all of the evidence and admissions in the record convinces us, however, that the learned trial judge was fully justified in making the findings he did upon this question, as well as all the other findings. No useful purpose would be served by a review of the evidence here.

The largest part of the brief of learned counsel for appellants is devoted to an attack upon the power of the board of public works to enter into any such arrangement or contract as is evidenced by these bonds. Counsel have collected a great array of authorities bearing upon the contracting power of the city and its board of public works, arguing with much skill that paying Costello the whole of the contract price and taking from him these bonds to secure the proper completion of the improvement was not only irregular but

wholly without the power of the board of public works,
rendering such action on its part *ultra vires* and void to the
extent that such bonds can in no event support the recovery
sought in this case.

It seems to us that, in view of the position in which we
find these appellants, they cannot be permitted to raise any
such question in defense of the claim which the city is making
against them in this action.   The arrangement entered into
between the deceased and the city was wholly for his benefit,
and resulted in his receiving full compensation for his work
in the construction of the improvements before he was en-
titled thereto.   It is difficult to see how this in any event
presents a question of *ultra vires*, for it was not seriously
contended that the contract was beyond the power of the
city to make, but it is contended that the board of public
works, the city's agents, did not have such power.   We need
not pursue this distinction further, however, since we con-
clude that whatever lack of power there was in the board of
public works, these appellants cannot now be heard to raise
such question.   In the case of *St. Louis v. Davidson*, 102
Mo. 149, 14 S. W. 825, 22 Am. St. 764, the city was seek-
ing to recover upon a contract made with Davidson pur-
porting to give him the privilege of working the city's pris-
oners at so much per day.   Disposing of defendant's conten-
tion of want of power in the city to make such a contract,
the court said:

"Was the city entitled to recover for the work actually
done by the prisoners, and not paid for by Davidson? and
was the latter estopped to deny the validity of the contract?
are the questions arising on this record.   It will have been
observed that the charter of the city while it does not per-
mit, yet does not prohibit, the making of such a contract as
the one before us, so that although the contract is *ultra vires*
the corporation, yet it is not illegal, because not prohibited
by the charter.   This is a distinction clearly marked out by
the authorities.   2 Dill. Mun. Corp. (4th ed.) sec. 936;
*McDonald v. Mayor*, 68 N. Y. 23; Bigelow, Estop. (5th ed.)
685.   And though a city might successfully interpose the

plea of *ultra vires* when sued upon a contract, yet it does not thence follow that a party who contracted with such city can, when sued on the contract, successfully interpose the plea of incapacity on the part of the city to make such a contract, such contract not being illegal in the sense already indicated. In instances of this kind, the plea of legal disability of the opposite contracting party is as much out of the power of a defendant to make as would be a plea of the minority of the other party in similar circumstances, something of which no one can advantage himself, except the party making it. Bigelow, Estop. (5th ed.) 465; *Oregonian Ry. Co. v. Oregon Ry. & Nav. Co.*, 10 Sawy. 464, 22 Fed. 245, 23 Fed. 232. But, upon a yet broader ground, the defense set up in the answers cannot be maintained; the contract was not prohibited by law. The principal in that contract has derived benefits under it; he cannot retain those benefits and repudiate the source from which they spring by denying the validity of the contract in which they originated. In short, he is estopped to grasp the benefits of that contract with one eager hand, while thrusting aside its burdens with the other."

See, also, *Town of Hendersonville v. Price*, 96 N. C. 423, 2 S. E. 155; *Monticello v. Cohn*, 48 Ark. 254, 3 S. W. 30; *Mayor etc. of New York v. Sonneborn*, 113 N. Y. 423, 21 N. E. 121; *In re Worcester County*, 102 Fed. 808; 1 Abbott, Municipal Corporations, §§ 259, 260; 1 Smith, Modern Law of Municipal Corporations, § 666; *Price v. Scott*, 13 Wash. 574, 43 Pac. 634.

The contention is made in appellants' reply brief that the estoppel claimed by the city against the appellants asserting the invalidity of the bonds is not available to the city, in that it is not pleaded. Admitting, for the sake of argument, that it was necessary in this case that the pleadings on the part of the city should show the facts upon which it relied as an estoppel, we think such facts are found in the pleadings of the city. The facts found by the court, the substance of which we have stated, are all set forth in the city's pleadings. This was a sufficient pleading of the facts relied upon by the city, though it did not in so many words allege the

conclusion that such facts constituted such estoppel. The facts are what constitute the estoppel, rather than the conclusion which the pleader might draw from the facts. *Anderson v. New York Life Ins. Co.*, 34 Wash. 616, 76 Pac. 109; 2 Bates, Pleading & Practice, pp. 1581, 1583.

It is also contended that there was a misjoinder of parties defendant. Conceding that such question is here for our review, we are unable to agree with such contention. It is not seriously contended that there would have been a misjoinder of parties had Peter Costello been alive and been joined as defendant with his surety. It is settled, under our statute and decisions, that there would have been no misjoinder in that event. Rem. & Bal. Code, § 192; *Eureka Sandstone Co. v. Long*, 11 Wash. 161, 39 Pac. 446; *Pacific Bridge Co. v. United States Fidelity & Guaranty Co.*, 33 Wash. 47, 73 Pac. 772.

It is seriously contended, however, that there cannot be a joining of an administrator as a defendant with a co-obligor of the deceased. Counsel assert in their brief that an action to establish a claim against an estate is in the nature of a special proceeding; and argue that, therefore, the liability of the co-obligor of the deceased cannot be determined in that proceeding, since the latter is to be determined in an ordinary civil action. In other words, that the liability of the estate and of the co-obligor of deceased are determinable by separate proceedings or actions of a different nature, and hence there can be no joinder of them as defendants. We do not agree with this view of our statute. A reading of the statute relating to the presentation and establishing of claims against an estate renders it plain that, upon the rejection of a claim, it is to be established, if at all, by an ordinary civil action brought and prosecuted by the claimant against the administrator, the same as against any other defendant. Rem. & Bal. Code, §§ 1479-1483. It is in no sense a special proceeding, nor is it a part of the probate proceeding; though if the issues should be made up between the parties by

proper pleadings filed in the probate cause, without objection to the manner of bringing the parties into court, as in the case of *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107, the court would have jurisdiction to try the issues. Such issues, however, would be tried by the rules governing civil actions, with the right of trial by jury preserved, as was held in that case.

It· is apparent then that a suit upon a rejected claim against an administrator is nothing more or less than a civil ·action, governed by the same rules as a suit by the city against the surety upon these bonds would be if the administrator were not joined as defendant. The supposed difference in the procedure looking to the adjudication of the rights of the city against the estate of the deceased and the surety, clearly furnishes no ground for holding they cannot be joined as defendants in an action to establish their liability upon these bonds. Nor can we see that the fact that the law provides for payment of the judgment against the administrator in course of administration, while it may be enforced by execution against the surety, furnishes any reason for holding there was a misjoinder, as is contended by counsel. Both the administrator and surety are in no different position than as if there were judgments rendered in separate actions against them upon these bonds. The supreme court of California in *Lawrence v. Doolan*, 68 Cal. 309, 5 Pac. 484, 9 Pac. 159, dealing with the question under a procedure very similar to our own, said:

"It. has been held in some cases that the representative of a deceased obligor cannot be joined with the co-obligors in an action on a bond, on the ground that one is charged *de bonis testatoris*, and the other *de bonis propriis*, and the judgment against the one would be different from that against the other. That reason does not prevail under the practice in this state, as the court is by the code authorized to render such judgment as will give effectual relief. The statute requires that before an administrator can be sued on an obligation arising in the lifetime of the deceased, a claim should be presented; after presentation and disallowance, suit may be brought against the representative as such, but the

judgment, as against him, must be that the amount be paid in due course of administration. That does not prevent the rendering of a proper judgment against surviving co-obligors."

See, also, *Corbaley v. State ex rel. Holmes*, 81 Ind. 62.

· It is further contended that the judgment is erroneous as to form, in view of § 1483 of Remington & Ballinger's Code, which provides:

"The effect of any judgment rendered against any executor or administrator shall be only to establish the claim in the same manner as if it had been allowed by the executor or administrator and the court; and the judgment shall be, that the executor or administrator pay, in due course of administration, the amount ascertained to be due, but no execution shall issue upon such judgment, nor shall it create a lien upon the property of the estate, or give the judgment creditor any priority of payment."

It is true this section seems to contemplate that the judgment should contain the direction as to the manner of its payment by the administrator. In this case the judgment was in usual form, but without any such direction. It is clear from the provisions of this section what the effect of such a judgment is and how it shall be paid by the administrator, and since in this case it is against the administrator as such, its force and effect is easily understood, though it may not contain words directing its manner of payment as provided by this section. We think, however, it is a better practice to use the words of the statute in a judgment against an administrator, and therefore direct that the judgment against the administrator be amended by inserting the words of the statute directing the manner of its payment.

We find no reversible error in the record and conclude that the judgment should be affirmed as thus modified. It is so ordered. Respondent will recover costs.

RUDKIN, C. J., DUNBAR, MOUNT, and CROW, JJ., concur.