[No. 17615.    Department One.    May 22, 1923.]

SOPHIA SCHADE, *Appellant*, v. WESTERN UNION LIFE
INSURANCE COMPANY et al., *Respondents*.[1]

INSURANCE (149)—LIFE INSURANCE—RIGHT TO CHANGE BENEFI-
CIARY—PROVISIONS OF POLICY—STATUTES—CONSTRUCTION. Rem. Comp.
Stat., § 7230-1, relating to the rights of beneficiaries in life policies,
does not forbid a provision in a policy reserving to the assured the
right to change the beneficiary named in the contract; and there
being no statute to that effect, the rights of a named beneficiary in
such a policy are contingent on the exercise of such reserved power
to make a change.

ESTOPPEL (35-1)—EQUITABLE ESTOPPEL—LOSS BY INNOCENT PARTY
—GIFTS—REDELIVERY BY DONEE. The wife, being the beneficiary in
her husband's life policies which reserved to the assured the right to
change the beneficiary, who claimed the policies as a gift, and who
paid some of the premiums, and who re-delivered the policies to the
insured, making it possible for him to change the beneficiaries and
borrow money thereon, the community gaining the benefit, is
estopped to assert title to the policies, and must bear the loss as the
one of two equally innocent persons whose act made the fraudulent
act possible.

SAME (64)—PLEADING AS DEFENSE—SUFFICIENCY. Failure to plead
an estoppel is not fatal to the raising of the point, where the case
was presented on the pleadings and a stipulation stating facts show-
ing the estoppel, and no objection was made to any testimony.

Appeal from a judgment of the superior court for
Spokane county, Blake, J., entered February 17, 1922,
dismissing an action on policies of life insurance, tried
to the court.    Affirmed.

*O. C. Moore* and *Turner, Nuzum & Nuzum*, for ap-
pellants.

*Graves, Kizer & Graves*, for respondents.

MITCHELL, J.—The complaint states two causes of
action, each on a policy of life insurance, one policy
dated December 6, 1906, for $5,000, and the other one
dated August 3, 1909, for $10,000, both written by the

[1]Reported in 215 Pac. 521.

Western Union Life Insurance Company on the life of Bernhard Schade, and in each of which his wife, the plaintiff herein, was nominated as beneficiary.   The suit is against the insurance company, and also against the Spokane & Eastern Trust Company, to which the insurance money was paid upon the death of the insured.   Upon the complaint, the answers of the defendants and plaintiff's replies thereto, the case was tried without a jury, and decided against the plaintiff as to both causes of action, from which judgment she has appealed.

The facts in the case as presented to the trial court and in this court seem not to be in dispute.   They are disclosed by allegations and admissions in the pleadings, together with a written stipulation of facts, which latter appears to be treated by the parties as covering all the controverted allegations in the pleadings of the respective parties.

At the date of the policies, the insured and the appellant were husband and wife, and continued to be such until his death, February 16, 1921.   Each of the policies contained the following provisions:

"Change of Beneficiary.—The insured may, at any time, without the consent of the beneficiary, provided this Bond is not assigned, change the beneficiary by filing a written request, duly acknowledged, accompanied by this Bond, such change to take effect upon the endorsement thereof upon this Bond by the Company, whereupon it will be returned to the insured."

"Assignment.—This Bond may be assigned, but any such assignment must be made in duplicate, and both copies must be sent to the Head Office of the Company, one being filed and one to be returned to the insured. Claim of assignee shall be subject to proof of interest, and the Company will assume no responsibility for the validity of any assignment."

Upon the issuance and delivery of each policy to the insured, he delivered it to his wife and declared it to be a gift, and she accepted it as a gift. She immediately permitted her husband to take each policy for the purpose of placing it in his safe for safe-keeping, without any agreement between them, or intention on her part, that she was thereby parting with the policy as her property. On a number of occasions thereafter, the number of times or dates not given, she paid the premiums due on the policies, upon her husband failing to do so. In November, 1913, the insured was indebted to the Spokane & Eastern Trust Company in an amount in excess of $14,000, which it was insisting should be paid, and in consideration of an extension of time for making payment, granted by the Spokane & Eastern Trust Company, he, without the knowledge or consent of his wife, assigned and delivered to it as collateral for the payment of his indebtedness the two policies of insurance. At the time of the delivery of the policies to the trust company, he had procured the written indorsement of the insurance company on each of them, as follows:

"At the request of the Insured, Bernhard Schade, the beneficiary hereunder is changed to the Insured's executors, administrators, or assigns, and not to Sophia Schade, Wife, as originally written.

"Dated at Spokane, Washington, this 24th day of November, 1913.

"Western Union Life Insurance Company.
                              "By J. N. Wright,
"Attest: Emma Daughs.                    Secretary."

The indorsement on each of the policies had been procured upon the duly acknowledged written request of the insured, according to the provision of the policy therefor, the request being accompanied with the policy which the insured alleged he was the holder of. And

at the same time, in delivering the policies as collateral, the insured executed and delivered with each of them his duly acknowledged written assignment thereof in duplicate, reciting that, for a valuable consideration, he assigned and transferred to the Spokane & Eastern Trust Company the policy and all benefit and advantage to be had or derived therefrom, subject to the conditions of the policy and to the rules and regulations of the company. The assignment in duplicate, in the case of each policy, was filed with the insurance company, which indorsed thereon its acceptance of the assignment, retaining one copy thereof and returning the other to the Spokane & Eastern Trust Company. During the years 1919 and 1920, the Spokane & Eastern Trust Company was compelled to pay premiums on the policies in the sum of $1,095.61, and from the date of the assignments his indebtedness, though fluctuating in amount, was at all times large, and at the date of his death amounted to $9,136.70.

After the death of the insured, the Spokane & Eastern Trust Company made proof thereof to the insurance company, demanded and received payment of the insurance money provided for in both of the policies, in the total sum of $15,621.16, and gave its acquittance and discharge therefor. Neither of the respondents had any knowledge or notice whatever that the insured had made, or attempted to make, a gift of the policies, or either of them, to his wife; or that he had delivered them, or either of them, to her at any time; or that she was in any way connected with them, other than that she was the wife of the insured and the original beneficiary named in the policies, as appeared upon the faces of them. The Spokane & Eastern Trust Company took the assignments and accepted the policies as collateral in the course of a regular, ordinary bank-

ing transaction, after the beneficiary had been changed in the manner provided for by the terms of the policies. Mrs. Schade, the appellant, was at no time aware that the policies had been changed as to the beneficiary; that they had been pledged and assigned; that the assignee had paid any premiums, or that the insurance money had been collected by the Spokane & Eastern Trust Company, until after all of those things had been done. She then brought this action.

The excess between the amount collected by the Spokane & Eastern Trust Company on the two policies and the amount of Schade's indebtedness to the trust company is in no way involved in this proceeding at this time, such excess having been satisfactorily arranged, as admitted by the appellant in her brief in this court.

It is contended on behalf of the appellant that, upon the gift of the policies to her by her husband, any contingency in her rights as beneficiary was overcome and that she thereupon became vested with full and complete title to the policies, and that the subsequent attempt of her husband to change the beneficiary and assign the policies were futile acts which neither divested her of her title nor conferred upon the assignee, the Spokane & Eastern Trust Company, any right superior to hers, either in law or equity.

Rather elaborate arguments have been made upon the point, by counsel on both sides, as to whether the facts show that there was a valid and completed gift, and if so, the result thereof in the law relative to the rights of the insured, under the particular terms of the policies, to change the beneficiary. However, we are constrained to hold, so far as this point is concerned, that appellant's conduct, more fully discussed hereinafter, has deprived her of any right to prevail over the respondents, or either of them.

Another argument presented on behalf of the appellant, generally speaking, is that the policy provisions purporting to authorize a change of beneficiary at the option of the insured are violative of the common law and of the statutes and public policy of this state whereby an indefeasible title vests immediately in the wife as beneficiary. Until the last two or three decades, life insurance policies did not contain any express reservation of power in the insured with reference to a change of the beneficiary, and in all of the earlier cases if the courts in construing policies concluded there was conferred upon the beneficiary named in the policy what was termed a vested interest, because of any rule of substantive law or public policy, or simply by judicial construction of the particular contract under consideration, those decisions can be of little purpose here, where, by the terms of the policies, the insured was given unlimited power and control so far as the rights of the beneficiary are concerned. There is no statute which specifically nullifies or forbids those terms, from which it follows that, whatever rights the beneficiary named in the contract took, they were, at the same time, contingent upon and qualified by the reserved power of the insured 'to change them to another, unless, however, the provisions purporting to authorize a change at the choice of the insured are violative of the spirit of the statutes of this state upon the subject-matter of such policies, or of some public policy of the state otherwise understood.

We are not aware of any rule or reason suggesting any threat or detriment to the public welfare because of such a provision in a contract of life insurance, unless it can be said that such provision is opposed by some statute which specifically or by a reasonable

interpretation forbids it. In this latter view the appellant relies on § 7230-1, Rem. Comp. Stat. [P. C. § 7855a], Laws of 1909, p. 556, § 36, which provides:

"If a policy of insurance is effected by any person on his own life, or on another life in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall unless contrary to the terms of the policy, be entitled to its proceeds against the creditors and representatives of the person effecting the same; and the person to whom a policy of life insurance is made payable may maintain an action thereon in his own name: *Provided,* That, subject to the statute of limitation, the amount of any premium for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice by or in behalf of a creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors. Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, shall, unless contrary to the terms of the policy, inure to her separate use and benefit, and to that of her children, subject to the provisions of this section relative to premiums paid in fraud of creditors."

We cannot agree with the appellant in her contention that a fair interpretation of this statute forbids a provision in the policy reserving to the insured the right to change the beneficiary named in the contract. Certainly it does not do so in terms. This court held in *Elsom v. Gadd,* 93 Wash. 603, 161 Pac. 483, 162 Pac.

867, that the statute is one for ". . . the exemption of the proceeds and avails of insurance policies to the beneficiary selected by the insured as the object of his bounty." That is, the statute defines the rights of the beneficiary as compared with the rights of creditors in the proceeds and avails of a policy, prescribing that, other than the exception contained in the proviso in the statute, they become hers or theirs in their own separate right, free from the claims of creditors. Now, if it be said that, in the *Elsom v. Gadd* case, *supra*, there was considered only the first part of the section quoted, and that the latter part of it, relating to the rights of a wife as a beneficiary, did not and has not received judicial interpretation, the answer is that, for our present purposes, the substantive, effective language of both parts being the same, the interpretation given by this court of the first must be followed in considering and interpreting the other.

Statutes like that portion of § 7230-1, Rem. Comp. Stat. [P. C. § 7855a], are not uncommon in other states where it is uniformly held that they do not prevent the insurer, under agreement written in the policy, from changing the interest of a married woman beneficiary as the insured pleases. Some of the cases, wherein still others are referred to, are as follows: *National Life Insurance Co. of United States v. Brautigam,* 163 Wis. 270, 157 N. W. 782; *Hopkins v. Hopkins Adm'r,* 92 Ky. 324, 17 S. W. 864; *Mutual Life Insurance Co. of Kentucky v. Twyman,* 122 Ky. 513, 92 S. W. 335, 121 Am. St. 471; *Crice v. Illinois Life Insurance Co.,* 122 Ky. 572, 92 S. W. 560, 121 Am. St. 489; *Cooper v. West,* 173 Ky. 289, 190 S. W. 1085; *Eves v. Sovereign Camp, Woodmen of the World,* 153 Mo. App. 247, 133 S. W. 657; *Robinson v. New York Life Insurance Co.,* 168 Mo. App. 259, 153 S. W. 534; *Mc-*

*Kinney v. Fidelity Mutual Life Insurance Co.,* 270 Mo. 305, 193 S. W. 564.

In the case of *Eves v. Sovereign Camp, Woodmen of the World, supra,* there is a very clear discussion of the reason why a statute of essentially the type under consideration does not stand in the way of an agreement in the policy that the insured may change the beneficiary to some one other than the wife. It was said by the court:

"Now when we turn to the section under discussion we do not find any language calculated to abridge the freedom of the insurer and insured to make their contract of insurance as they see fit; neither does plaintiff's counsel attempt to guide us to any such language. The language used is, 'Any policy of insurance heretofore or hereafter made by any insurance company on the life of any person, expressed to be for the benefit of any married woman . . . shall inure to her separate use and benefit.' It is the *policy,* as it may have been or may be made by the insurance company, that inures. There is no attempt disclosed to vary the terms of the contract of insurance or to derogate from the right to contract freely with regard to the beneficiary. On the contrary, before the policy inures it must be *expressed* to be for the benefit of the married woman. That is, the insured and insurer must first of their own free will make their contract so that it will be expressed to be for her benefit. They may omit her altogether if they desire; or they may give her an interest only in common with others. Their power in that respect is left general and unrestricted. Being so, it includes the power to make a qualified appointment and to reserve the power to revoke and to substitute. [Am. & Eng. Ency. of Law (2d Ed.) vol. 22, p. 1138; Bacon, section 290, 291.]"

And again, in discussing the statute as to its real intent and meaning, in the case of *McKinney v. Fidelity Mutual Life Insurance Co., supra,* the court said:

"The design of this statute was to affect the *quality*

of the estate given to the wife by virtue of her being a beneficiary in the policy and to make whatever should come to her thereunder, a part of her separate estate and exempt from the claims of the creditors of her deceased husband. It was not the design of the statute to disable the husband in the making of his contract, from entering into an agreement which would render the interest of his wife, as beneficiary, wholly con-tingent upon the non-exercise of such powers as were reserved to the insured under the conventional and statutory terms of the present policy. The statute did not intend nor provide, nor could it be rationally construed, that the husband should not have full liberty to contract with reference to the interest which he might desire to give to his wife as beneficiary in a policy upon his life. It only provides that whatever contract he does make—whether giving her an absolute or a conditional interest—shall result in making that interest, if it ever accrues to the wife, a part of her separate estate.''

These considerations must be supplemented by an-other one already adverted to in support of the judg-ment appealed from. Having seen that the agreement in the policy of reserved power in the insured to change the beneficiary is not contravened by any law or public policy, the appellant by permitting the insured to have possession of the policies, after she claims he gave them to her, has by that conduct, making possible his subsequent transactions with them, placed herself where she cannot be heard to complain. She redeliver-ed to him contracts drawn in such form that he could use them as he saw fit, in a business way with persons who in recent years are presumably quite familiar with such securities. It is a pretty clear case for the appli-cation of the rule, too well recognized to require the citation of authorities in support of it, that where one of two equally innocent persons must suffer, that one whose act or neglect made the fraudulent act possible must bear the loss occasioned thereby. If it shall be

argued that this does not mean that one is to be held estopped when he innocently, for an honest purpose and with reasonable care, furnishes a third party the means by which he perpetrates a fraud from which he who provides the means derives no benefit, the appellant is nevertheless precluded, and that without any condemnation of her purpose or her trust in her husband, for the manifest reason that she did derive a benefit. In consideration of the assignment and delivery of the policies, the community consisting of herself and her husband received the valuable consideration (13 C. J. 344-345) of an extension of time in which to pay its debt, and thereafter the proceeds and avails of the policies, upon being collected from the insurance company, were applied in payment of the debts owing by the community to the assignee, who had collected the money, to the extent it was necessary for that purpose.

Some contention is made on behalf of the appellant that the defense of estoppel has not been plead, and that therefore the respondents are not situated so as to invoke the application of it. However, the case was presented upon the pleadings and a stipulation as to the facts. No objection of any kind was made to any testimony; and while there is no portion of the answers of the respondents which specifically states or alleges, in so many words, that the appellant is estopped, the pleadings, together with the stipulation, present a case clearly entitling the respondents to the contention made, it being unnecessary to allege the conclusion that the adverse party is estopped. *Anderson v. New York Life Insurance Co.*, 34 Wash. 616, 76 Pac. 109; *Spokane v. Costello*, 57 Wash. 183, 106 Pac. 764.

Judgment affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.