[No. 17764.  *En Banc.*  August 16, 1923.]

### MARY A. WELDFELT, *Respondent,* v. C. O. HART, *Appellant.*[1]

VENDOR AND PURCHASER (123)—BONA FIDE PURCHASERS—NOTICE—RECITALS IN CONVEYANCE—ERRONEOUS DESCRIPTION. Where an uncertainty in the area of a tract of "ten acres more or less" appeared from the first deed in the chain of title and the same was apparently corrected in three subsequent deeds, conveying portions of the tract, therein definitely fixed as containing ten acres, a subsequent bona fide purchaser of a portion of the tract is not put on inquiry or bound to take notice that the first deed did not convey a tract of ten acres (PEMBERTON, J., dissents).

Appeal from a judgment of the superior court for Kitsap county, French, J., entered June 13, 1922, upon findings in favor of the plaintiff, in an action to quiet title. Reversed.

[1]Reported in 217 Pac. 723.

*Hartman & Hartman, W. H. Bolen, Karl H. Kober,*
and *Chas. Ethelbert Claypool,* for appellant.
*Burkheimer & Burkheimer,* for respondent.

MACKINTOSH, J.—Both parties to this action are en-
deavoring to have their titles quieted to certain real
estate. The respondent and her then husband, on May
1, 1903, received a deed in which the description of the
property conveyed was as follows:

"Commencing at the southwest corner of land owned
by Andrew Lawson, thence North 17 degrees 10′
West, 577½ feet to the meander line of Port Orchard,
thence in a southwesterly direction along said meander
line to a point 390 feet, more or less south of the corner
to fractional sections 7 and 8, Township 25 North,
Range 2 East, thence due East to place of beginning,
containing 10 acres, more or less."

The respondent and her then husband, on July 27,
1904, conveyed to one Thompson, by metes and bounds,
the west 2½ acres of the above described property.
The respondent and her then husband, on August 9,
divided the remaining portion of the above described
property by executing and delivering simultaneously
the following deeds:

Deed from Mary A. Weldfelt, wife of Samuel C.
Weldfelt, the grantee hereinafter named, to Samuel C.
Weldfelt:

"First party, for the purpose of divesting the real
estate herein conveyed of all community character,
does hereby convey and warrant to second party as
his sole and separate property, the following described
lands in Kitsap county, Washington, to-wit:

"The East 3 acres of the 7⅛ acres now owned by
grantor and grantee herein, said 7⅛ acres being the
East 7⅛ acres of the following described 10 acres,
more or less, to-wit:

"Commencing at the southwest corner of land owned by Andrew Lawson. Thence North 17 degrees 10' West 577½ feet to meander line of Port Orchard; thence in a southwesterly direction along said meander line to a point 390 feet, more or less, South of the corner to fractional Secs 7 and 8, Township 25 North Range 2 East; thence due East to place of beginning, containing 10 acres, more or less. The West line of said 3 acres to be and run parallel with the East line of said 3 acres.

"Grantor herein reserves for herself, her heirs, grantees and assigns from said 3 acres, and grantee in accepting this conveyance consents thereto, a right of way for ingress and egress to the water on the Northerly side of said 3 acres of sufficient width for a foot path from the lands, to-wit: *The 4⅛ acres which grantee herein as part of the same transaction, conveys to grantor herein,* across said three acres, down to the water's edge; said foot path running in a Northerly direction and being more particularly set forth as the same path now located upon and used as such by the parties hereto across said 3 acres.

"(Signed) Mary A. Weldfelt."

Deed from Samuel C. Weldfelt, then husband of Mary A. Weldfelt, the grantee hereinafter named, to Mary A. Weldfelt:

"First party for the purpose of divesting the real estate herein conveyed of all community character, does hereby convey and warrant unto second party as her sole and separate property the following described land in Kitsap County, Washington, to-wit:

"The West 4⅛ acres of the 7⅛ acres now owned by grantor and grantee herein, said 7⅛ acres being the East 7⅛ acres of the following described property, to-wit:

"Commencing at the southwest corner of land owned by Andrew Lawson, thence North 17 degrees 10' West 577½ feet to the meander line of Port Orchard, thence in a southwesterly direction along said meander line to a point 390 feet more or less South of the corner to fractional sections 7 and 8, Township 25 North,

Range 2 East, thence due East to the place of beginning, containing 10 acres, more or less.

"(Signed) Samuel C. Weldfelt."

Samuel C. Weldfelt, on November 2, 1911, conveyed his portion of the property to the Northwest Trust and Safe Deposit Company, by deed as follows:

"First party does hereby convey and warrant unto second party the following described real estate in Kitsap county, Washington, to-wit:

"The East 3 acres of the East 7⅛ acres of the following described 10 acres, more or less, commencing at the southwest corner of land conveyed by Andrew Lawson, thence North 17 degrees 10' West 577½ feet to the meander line of Port Orchard, thence in a southwesterly direction along said meander line to a point 390 feet, more or less south of the corner to Fractional sections 7 and 8, Township 25 North, Range 2 East, thence due East to place of beginning.

"The West line of said 3 acres to be and run parallel with the East line of said 3 acres. The property herein conveyed is the separate property of the grantor, as evidenced by Deed in his favor recorded in Vol. 71, page 365, Records of Kitsap County.

"(Signed) Samuel C. Weldfelt."

The Northwest Trust and Safe Deposit Company, on May 3, 1920, conveyed the property to the appellant by deed containing the following description:

"3 acres of land more or less conveyed by Samuel C. Weldfelt to said grantor November ——, 1911, and recorded in Vol. 79, on page 321, Records of Kitsap County and more particularly described as follows, to-wit: The Northeasterly 3 acres of the following described tract of land: Beginning at a point which bears N. 37 degrees W. 208 feet from the corner to Sections 7, 8, 17 and 18, Twp. 25 North Range 2 East W. M. thence N. 41 degrees 20' 20" W. 58.59 feet to an angle point in the meander of Port Orchard; thence along said meander line S. 55 degrees, 30' W. 376.88 feet; thence S. 66 degrees, 15' W. 342.54 feet; thence S. 55 degrees 30' W. 431.77 feet; thence (leaving said

meander line) East 1189.32 feet; thence N. 17 degrees 10′ 50″ W. 577.78 feet to the place of beginning. The southwesterly line of said 3 acre tract being parallel with the portion of the line on the northeasterly side thereof which bears N. 17 degrees 10′ 50″ W.''

Subsequently it was discovered that, instead of there being 7⅛ acres remaining after the transfer of the west 2½ acres to Thompson in 1904, there had remained only about five acres. It is the claim of the appellant that he is an innocent purchaser for value without notice of any shortage, and therefore is entitled to the full amount described in the conveyance to him, while the respondent claims that she is entitled to the 4⅛ acres deeded to her at the time of the division of the property between her and her then husband.

It was found by the trial court that the deeds executed by the respondent and her then husband were executed and delivered simultaneously as part of the same transaction; that the boundary line between the properties described in the two deeds has never been determined and the court thereupon divided the property between the appellant and the respondent in proportion to the number of acres each was entitled to upon the face of the two conveyances.

The respondent concedes that the appellant had no actual notice of the shortage, but claims that notice is imputable to him as an examination of the records should have disclosed the shortage. The description contained in the first deed mentioned in this opinion is uncertain, and were that the only deed in the chain of title, it might well be that this would be notice of an uncertainty which would put the burden upon a subsequent purchaser of ascertaining the exact acreage at his peril; and many of the authorities cited by the respondent would justify that holding. But those authorities go no farther than that, and none has been

cited which goes to the extent to which the respondent's argument leads. The first deed would put the searcher of the record on notice; but the second, third and fourth deeds have entirely eliminated all the uncertainty in the first. Each positively describes and conveys a tract whose exact acreage is given, and the total of all tracts conveyed by these deeds is less than ten acres, and therefore in no wise at variance with the description contained in the first deed. None of these subsequent deeds gives notice of any uncertainty as to quantity, nor contains anything to put a record searcher upon inquiry, but, on the contrary, all are definite and certain. In fact, they fully and fairly answer and satisfy the uncertainty contained in the first deed, so as to convince any prudent searcher that the shortage has been ascertained to be one-eighth of an acre, and that it has been purposely eliminated.

A chain of title is what the name implies. Each link therein, while having an entity of its own, bears a certain relation to every other link, and all are necessary to complete the chain; so, when a particular link shows weakness or excites apprehension, curative instruments may be, and often are, filed, and which are always considered. Here, the grantees in the first deed, by the execution of the second and third deeds, made curative instruments, which, if so intended, could not have been better designed to cure the previous uncertainty. The chain of title as a whole is not such as to excite apprehension in the mind of a person of average prudence; and, if the first deed was sufficient to excite such apprehension, still, the three deeds which follow (in two of which respondent was a party, and the third of which was made only because she consented to be bound by its predecessors), seem to have been expressly intended to set every doubt at rest, and respondent should now be estopped from asserting otherwise.

When a deed is inspected, the person making the inspection is charged with notice of only those facts which the contents of the deed reasonably import, and he should not be charged with constructive notice unless the contents of the deed are such as would naturally necessitate a suspicion in the mind of a reasonably prudent man and result in inquiry. *Daly v. Rizzutto,* 59 Wash. 62, 109 Pac. 276, 29 L. R. A. (N. S.) 467; *Bair v. Wiese,* 124 Wash. 691, 215 Pac. 61.

The courts protect *bona fide* purchasers buying property with reference to the description contained in the deed and have held estopped those parties who, by their own negligence, have asserted a title to the world made by a proper record as a good title. *Burr v. Dyer,* 60 Wash. 603, 111 Pac. 866; *McIver v. Hilstad,* 80 Wash. 206, 114 Pac. 306; *Schade v. Western Union Life Ins. Co.,* 125 Wash. 200, 215 Pac. 521; 21 C. J. 1067.

Attention has been called to cases such as *Booth v. Clark,* 59 Wash. 229, 109 Pac. 805, Ann. Cas. 1912A 1272, and others where apportionment has been made between parties so that the overplus or shortage may be equitably distributed; but an examination of all of those authorities will disclose that they involved persons similarly situated—that is, they were controversies between parties deriving title from the same instrument or from a division made at the same time or persons purchasing from one original grantor, and, were the case before us merely one between the respondent and her former husband, the applicability of that rule would be apparent; but here we have a different situation—for the appellant in this case was not one of the parties to the original transaction but was a subsequent *bona fide* purchaser for value, and, as we have seen, without notice, actual or constructive.

Appellant, therefore, being in this situation, should have prevailed, and the decree appealed from is re-

versed, with orders to enter a new decree in conformity with this opinion.

MAIN, C. J., BRIDGES, PARKER, HOLCOMB, TOLMAN, and MITCHELL, JJ., concur.

PEMBERTON, J., dissents.