IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Estate of:
THOMAS ROBINSON,

Deceased.

RUDY ROBINSON,

Respondent,

v.

CHRISTINE O. MCCALLA,

Appellant.

No. 80110-4-I

DIVISION ONE

UNPUBLISHED OPINION

LEACH, J. — In this probate matter, Christine McCalla appeals a superior court order removing her as the personal representative of her late father's estate and ordering her to pay damages to the estate. The record contains insufficient evidence to support the amount of damages awarded for uncollected rent and for decreased value or destruction of estate property. So, we reverse the judgment for damages. In all other respects, we affirm.

FACTS

Thomas Robinson died testate in September 2018 survived by two children, Christine McCalla and Rudy Robinson.[1] Thomas's will named Christine

---

[1] Because some of the family members involved in this appeal share the same last name, we use first names for clarity.

Citations and pincites are based on the Westlaw online version of the cited material.

as the personal representative of the estate, and if she were unable or unwilling to serve, it designated Rudy as the successor personal representative.[2] Thomas's will granted "unrestricted nonintervention powers" to the personal representative. Apart from specifically designated items of tangible property, the will gave the Thomas estate in equal shares to the children.

At the time of Thomas's death, he lived in the Seattle home purchased in 1970 with his late spouse. Christine lived across the street. Christine's daughter, Salina McCalla, had been living with Thomas for several years. After Thomas's spouse passed away, Salina cared for Thomas in the evenings and weekends when his employed caregiver was off duty. Salina sometimes accompanied Thomas to medical appointments or to the hospital. By mutual agreement, Salina did not pay rent to Thomas.

The primary asset of Thomas's estate was his home. After Thomas died, Christine allowed Salina to continue to live in the home without paying rent to the estate. After several months, in January 2019, Christine responded to Rudy's concerns about this arrangement. She claimed it was Thomas's wish that Salina remain in the home until it was sold. Christine also reported that after their father's death, Rudy had agreed that Salina should continue to live in the home to protect it and its contents. Christine described some steps she had taken to prepare the home for sale. Christine hired individuals to help pack her father's

---

[2] Thomas's will uses the terms "executrix" and "executor." In the context of this case, these terms are interchangeable with the term "personal representative". These terms apply to the individual appointed to administer an estate. RCW 11.02.005(4).

personal belongings and clean the home, identified a real estate agent to list the home, and arranged for an appraisal of the home. She maintained that Salina was looking for new housing.

In February 2019, Rudy submitted a creditor's claim against Thomas's estate under chapter 11.40 RCW. As the factual basis for the claim, Rudy cited Salina's continued occupation of the home without paying rent. He also alleged Salina's two pit bulls had caused "significant damage to the stairs in the house." Rudy demanded that Salina move out, and he asserted that the estate had a claim against her for rent from the date of Thomas's death and for damage to the property. Rudy estimated that the value of the claim was "$1,800/month for rent and $25,000 in property damage."

Christine, as personal representative, rejected the creditor's claim. Rudy then filed a "Petition on Rejected Claim and Complaint to Quiet Title" in superior court. Rudy made claims of unjust enrichment and ejectment.[3] Rudy relied on the "facts and circumstances" alleged in his creditor's claim to support his claims. Rudy scheduled a hearing on his petition in the Probate Department of the King County Superior Court.

In response, Christine asserted that the only damage caused by the dogs had been repaired at her personal expense. She also stated her view that the house needed to be occupied while she prepared it for sale.

---

[3] Rudy also asserted a claim of quiet title related to the deed to Christine's home that her parents transferred to her in 2016.

In reply, Rudy asked the court to remove Christine as personal representative of the estate. He also asked the court to require Christine to reimburse the estate for uncollected rent and for the property damage caused by the dogs. Rudy denied agreeing to allow Salina to continue to live in the home without paying rent and alleged the dogs had destroyed the hardwood flooring.

Christine filed an additional declaration just before the April 8, 2019 hearing. She claimed the only damage caused by Salina's dogs had been repaired and stated her intent to place the home on the market on or before April 22, 2019. Christine also declared she used her own personal funds to pay the nearly $2,000 mortgage payment for Thomas's home twice in the months before he died.

At the brief hearing on Rudy's petition, the parties focused on whether as the personal representative, Christine had a fiduciary duty to the estate to rent the home and whether there was evidence of property damage. At the conclusion of the hearing, the court revoked Christine's letters testamentary and appointed Rudy as personal representative. The court found that Christine had engaged in "mismanagement and/or fraud on the estate by allowing her daughter to live in the house on a rent free basis for the last seven (7) months." The court also ordered Christine to pay damages of $37,600 to the estate. The court later denied Christine's motion for reconsideration. Christine appeals.

ANALYSIS

Removal of Personal Representative

RCW 11.68.070 allows an heir, devisee, or legatee to petition the superior court to remove a personal representative, even one with nonintervention powers. This statute provides that a party qualified to seek removal must file a petition with a supporting affidavit that establishes a prima facie cause for removal. After this occurs, the superior court must cite the personal representative to appear before it to respond to the petition.

Christine challenges her removal as personal representative of the estate. She correctly points out that Rudy did not file a petition under RCW 11.68.070, the applicable statute, and did not expressly ask the court to revoke her personal representative status until he filed his reply brief.[4] To the extent Christine suggests these procedural deficiencies implicated the court's "jurisdiction" to decide the matter, we disagree. In a recent analogous case involving the removal of co-personal representatives/co-trustees, Matter of Estate of Reugh, Division Three of this court rejected language in previous cases declaring that a superior court can lose "jurisdiction" to decide matters involving nonintervention estates.[5] The court clarified that under the Washington Constitution and

---

[4] Rudy improperly relied on creditor's claim statutes under chapter 11.40 RCW, which apply to persons who have claims against a decedent based on debts incurred by or for the decedent during the decedent's lifetime. Olsen v. Roberts, 42 Wn.2d 862, 865, 259 P.2d 418 (1953). Furthermore, a party must bring an ordinary civil action on a rejected creditor's claim, which is not a part of probate proceedings. Schluneger v. Seattle-First Nat'l Bank, 48 Wn.2d 188, 189-90, 292 P.2d 203 (1956); City of Spokane v. Costello, 57 Wash. 183, 106 P. 764 (1910).

[5] 10 Wn. App. 2d 20, 44-46, 447 P.3d 544 (2019).

numerous statutes, superior courts have jurisdiction over all probate matters. "Subject matter jurisdiction simply means the claimant brought the suit in the right court."[6] This jurisdiction does not depend on compliance with statutory procedural requirements.[7]

Nevertheless, Christine contends that without a petition under RCW 11.68.070 before it, the court's authority was "never correctly triggered" and the court did not "gain authority" to intervene in the management of the nonintervention estate. But, Christine did not properly raise this claim of error in the trial court. A party may not generally raise a new argument on appeal that the party did not present to the trial court.[8] A party must inform the court of the rules of law it wishes the court to apply and give the trial court an opportunity to correct any error.[9] Proper preservation of error not only provides the trial court with the opportunity to correctly rule on matters, but it also serves the goal of judicial economy and facilitates appellate review by ensuring a complete record on appeal.[10]

The decision in Reugh is instructive. There, purported trust beneficiaries filed a motion in probate proceedings to remove the co-trustees/co-personal representatives.[11] The testator's children opposed the motion on the ground that the beneficiaries filed a motion and not a petition, which starts a show cause

---

[6] Reugh, 10 Wn. App. 2d at 49.
[7] Reugh, 10 Wn. App. 2d at 49-50.
[8] In re Detention of Ambers, 160 Wn.2d 543, 557, 158 P.3d 1144 (2007).
[9] Smith v. Shannon, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).
[10] State v. Strine, 176 Wn. 2d 742, 749-50, 293 P.3d 1177 (2013).
[11] Reugh, 10 Wn. App. 2d at 36.

process.[12]   But, they did not challenge the court's authority based on the nonintervention powers of the trustees or argue that the purported beneficiaries were not qualified to seek removal under RCW 11.68.070.[13]   The children also declined the court's offer to remedy any procedural error by entering a show cause order and scheduling a later hearing.[14]   Because the children failed to raise the issue about the court's authority in a nonintervention estate in the trial court, the court declined to address their claim on appeal.[15]   The court also held the children either waived any objection to the process or invited the error by choosing to proceed to address the merits of the request for removal.[16]

Here, Rudy consistently alleged that Christine was mismanaging the primary asset of the estate.  Christine responded to his allegations claiming that Salina's continued occupancy of the home was a benefit to the estate and asserting that both Thomas and Rudy had agreed to the arrangement.  After Rudy filed his reply brief, and expressly sought her removal as the personal representative, Christine filed additional documents.  In doing so, she directly responded to Rudy's reply but did not raise the issue of the court's authority to rule on the request for removal.  At the hearing on Rudy's petition, the court specifically noted the request before it to revoke Christine's status as the personal representative.  Again, Christine focused on the substantive allegations and did not challenge the court's authority based on the nonintervention estate or

---

[12] Reugh, 10 Wn. App. 2d at 37.
[13] Reugh, 10 Wn. App. 2d at 37.
[14] Reugh, 10 Wn. App. 2d at 37.
[15] Reugh, 10 Wn. App. 2d at 51.
[16] Reugh, 10 Wn. App. 2d at 62.

lack of compliance with RCW 11.68.070 to address the removal request. As in Reugh, Christine waived any claim that the court lacked authority to decide Rudy's request.[17]

Even if the court had authority to entertain Rudy's request, Christine claims the record contains no evidence of misconduct that warranted her removal as personal representative. A personal representative "stands in a fiduciary relationship to those beneficially interested in the estate ... [and] is obligated to exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs."[18] RCW 11.68.070 and RCW 11.28.250 protect beneficiaries and other interested parties when a personal representative breaches fiduciary duties.[19] RCW 11.68.070 authorizes the superior court to remove any personal representative who "fails to execute his or her trust faithfully or is subject to removal for any reason specified in RCW 11.28.250." RCW 11.28.250 in turn declares:

> Whenever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his or her

---

[17] While Christine raised the issue of the court's authority to intervene in a nonintervention estate in her motion for reconsideration, this fact does not affect our waiver analysis. A trial court may decline to consider any new theory presented for the first time in a motion for reconsideration. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005); JDFJ Corp. v. Int'l Raceway, Inc., 97 Wn. App. 1, 7, 970 P.2d 343 (1999). We review a trial court's denial of a motion for reconsideration for abuse of discretion. Wilcox, 130 Wn. App. at 241. A trial court does not abuse its discretion when it refuses to consider a new theory raised for the first time in a request for reconsideration. River House Dev. Inc. v. Integrus Architecture, P.S., 167 Wn. App. 221, 231, 272 P.3d 289 (2012).

[18] Matter of Estate of Larson, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985).

[19] In re Estate of Jones, 152 Wn.2d 1, 11, 93 P.3d 147 (2004).

charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after notice and hearing to revoke such letters.

The superior court must have valid grounds for removal under these provisions and the record must support the grounds.[20] At the same time, the superior court has broad discretion to remove a personal representative and a reviewing court will not ordinarily interfere.[21] A single ground for removal will suffice.[22]

Christine asks this court to review her removal de novo because the court resolved the issue based on written declarations rather than live testimony. But, we need not resolve the standard of review because under either a de novo or deferential standard, we would affirm the court's decision.

Heirs may not treat estate real property as their own during the pendency of probate.[23] And, while a personal representative may possess and control estate property during the administration of the estate, and has a right to the property even against other heirs, the personal representative is accountable to the estate for this use.[24] This means that where a personal representative chooses to use the decedent's real property for personal benefit, she must pay rent to the estate.[25] This rule applies even when the personal representative

---

[20] In re Beard's Estate, 60 Wn.2d 127, 132, 327 P.3d 530 (1962); Matter of Aaberg's Estates, 25 Wn. App. 336, 339, 607 P.2d 1227 (1980).

[21] Beard's, 60 Wn.2d at 132; Reugh, 10 Wn. App. 2d at 63.

[22] Jones, 152 Wn.2d at 10.

[23] Jones, 152 Wn.2d at 14.

[24] Jones, 152 Wn.2d at 14.

[25] Jones, 152 Wn.2d at 14.

claims that such use benefits the estate by protecting real property against vandalism and decay.[26]

Consistent with these principles, the trial court determined that Christine used estate property for her own purposes by allowing her daughter to live there rent free during the administration of the estate. The estate may have received some benefit from her daughter's presence in the house but did not negate the personal representative's accountability to the estate. The trial court could reasonably find her failure to collect rent on behalf of the estate amounted to mismanagement and a breach of her fiduciary duty to the estate. This remains true despite the fact that it was Christine's daughter and not Christine who lived in the home. Although Christine points to examples of more egregious self-dealing, there were still valid grounds to support the removal and sufficient evidence in the record to support those grounds.[27]

Damages

Christine also claims the court should not have entered the judgment for damages against her. Christine argues that neither Rudy's creditor's claim nor a petition under RCW 11.68.070 provides a statutory basis to award damages. Christine also claims the record does not contain sufficient evidence to support the award. We need not address Christine's first contention because we agree the record lacks evidence to support the amount of damages awarded.

---

[26] Jones, 152 Wn.2d at 14.
[27] Jones, 152 Wn.2d at 21.

A claimant bears the burden of proof on the amount of damages and must present sufficient evidence to support a damage award.[28] The burden does not require mathematical certainty or precision about the amount of damages, but there must be "'competent evidence in the record'" to support the claimed damages.[29] "Evidence of damage is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture."[30]

The court awarded damages of $37,600 comprised of $25,000 for property damage and $12,600 for uncollected rent (7 months at $1,800 per month). But, apart from Rudy's conclusory allegations, no evidence in the record supports these amounts. In his petition, Rudy claimed the failure to charge rent resulted in an estimated loss to the estate of $1,800 per month. Elsewhere, he asserted the "reasonable rental value" of the home was at least $1,900 per month. He provided no competent evidence to support the use of either of these figures.[31] And, in ordering damages equal to seven months estimated rent, the court necessarily concluded the house could and should have been rented almost immediately after Thomas's death. But, the only evidence in the record

---

[28] O'Brien v. Larson, 11 Wn. App. 52, 54, 521 P.2d 228 (1974).

[29] Fed. Signal Corp. v. Safety Factors, Inc., 125 Wn.2d 413, 443, 886 P.2d 172 (1994) (quoting Interlake Porsche & Audi, Inc. v. Bucholz, 45 Wn. App. 502, 510, 728 P.2d 597 (1986)); Bunch v. King County Dep't. of Youth Servs., 155 Wn.2d 165, 180, 116 P.3d 381 (2005).

[30] Clayton v. Wilson, 168 Wn.2d 57, 72, 227 P.3d 278 (2010) (quoting State v. Mark, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984)).

[31] To the extent that Rudy attaches documents to his response brief to substantiate the estimated monthly rental amount, it does not appear that he presented these documents and they are not included in the record on appeal. So, we decline to consider the supplemental materials. RAP 10.3(a)(8).

suggests this was not the case. Salina occupied the house at the time, the home contained all of Thomas's personal belongings, and the house required cleaning and certain maintenance.

With regard to property damage, Rudy alleged that Salina's dogs damaged stairs, hardwood floors, and the lawn. He provided no evidence to substantiate any of these claims. He did not explain how he knew the dogs were responsible. He did not claim, much less establish, the damage occurred during the period when Christine was the personal representative. Most significantly, he provided no evidence to show $25,000 was a reasonable estimate of the loss in value or cost to repair any damage to the home.

With respect to both property damage and uncollected rent, apart from unsupported assertions, nothing in the record supports the amount of damages awarded.

<u>Reconsideration</u>

Christine next challenges the court's decision denying her motion for reconsideration because the superior court denied her motion before the time expired to file a reply brief.[32] Relying on <u>Pacific Industries, Inc. v. Singh</u>, Christine argues the court "misapplie[d] a procedural timing rule," and therefore abused its discretion in denying her motion.[33] In that case, although we concluded the court miscalculated the time to file a motion for reconsideration

---

[32] KCLR 59(b) provides that if the superior court requests a response to a motion for reconsideration, then "a reply may be filed within two court days of service of the response." However, the court entered an order the day after Rudy filed his response.

[33] 120 Wn. App. 1, 12, 86 P.3d 778 (2003).

and therefore erred by refusing to consider a timely motion, the error was harmless and did not require remand since the appellate court reviewed the issues and rejected them on appeal.[34] Christine contends the court would have reached a different result had it considered her reply and additional materials. But, as in Pacific Industries, even assuming error neither reversal nor remand would be appropriate in view of our appellate review.

Attorney Fees

Finally, Christine requests an award of attorney fees incurred on appeal, under RCW 11.68.070 and RCW 11.96A.150, a provision of the Trust and Estate Dispute Resolution Act (TEDRA).[35] Both provisions provide for awards of attorney fees at the court's discretion.

Christine argues she is entitled to fees because Rudy's petition was procedurally improper and "bordered on frivolous." However, the petition raised an underlying issue that was not frivolous and Christine prevails on appeal only in part. Under these circumstances, we decline to award fees.

We reverse the judgment for damages and otherwise affirm.

_Leach, J._

WE CONCUR:

_Brunmer, J_          _Mann, C.J._

---

[34] Pacific Indus., 120 Wn. App. at 11-12.
[35] Both parties requested fees. The court initially stated it would grant Rudy's request for attorney fees of $3,000 but ultimately reserved the issue.