[No. 13870. Department Two. April 3, 1917.]

E. H. GUIE, *Appellant*, v. OVID A. BYERS *et al., Respondents.*[1]

CONTRACTS—CONSTRUCTION — INTENT OF PARTIES — "RENEWAL" OF MORTGAGE. An agreement that $1,000 of the purchase price of property be placed in escrow and used to pay commissions and expenses in securing an "extension" and a "renewal" of a past due $40,000 mortgage, which both parties to the contract had to obtain or lose their interest in the property, should be construed to cover costs and expenses incurred by the purchaser in taking up the mortgage and replacing it by a new loan, after all efforts to obtain a "renewal" of the original mortgage had failed; since the word "renewal" is not a word of art or of technical significance, but should cover the temporary purchase of the original mortgage for the purpose of saving the property as within the intent of the parties.

Appeal from a judgment of the superior court for King county, Ronald, J., entered September 14, 1916, upon findings in favor of the defendants, in an action on contract, tried to the court. Affirmed.

*W. A. Keene* and *J. A. Guie,* for appellant.

*Byers & Byers,* for respondent.

[1]Reported in 164 Pac. 75.

HOLCOMB, J.—On the date therein stated, the parties con-
tracted in writing as follows:

"This agreement, made and entered into this 12th day
of February, 1915, between Ovid A. Byers, party of the
first part, and E. H. Guie and E. O. Patterson, parties of
the second part, witnesseth:

"That one thousand dollars ($1,000) of the purchase price
of the certificate of purchase of lot one (1), block sixty-six
(66), Plat of A. A. Denny's addition to the city of Seattle,
which the purchase money receipt provides shall be held in
escrow, may be and is so held by the said first party, and
said one thousand dollars ($1,000), or so much thereof as
may be necessary, may be used towards securing an exten-
sion of said mortgage and a renewal of said forty thousand
dollar ($40,000) mortgage in payment of such bonus or
commission that first party may be required to pay, but any
excess remaining between the amount necessary to negotiate
a renewal or extension of said loan shall be paid to the parties
of the second part, which shall be accomplished on or before
August 16, 1915.

"In witness whereof, the parties hereto have set their
hands and seals, the day and year first above written.

"Ovid A. Byers,                    (Seal)
"(Signed) By Alpheus Byers.
"E. P. Patterson,                  (Seal)
"(Signed) By E. H. Guie.
"E. H. Guie,                       (Seal)"

The agreement is loosely drawn. It appears from the
evidence, however, that, on and prior to that date, one E. O.
Patterson, as receiver of The Nye & Ormsby County Bank
of Carson City, Nevada, was the owner of a sheriff's sale
certificate, as purchaser at sheriff's sale of the real estate
described in the agreement; that, on about the date of the
agreement, the respondent Byers, acting avowedly for an
undisclosed principal, purchased the certificate of sale from
Patterson, acting through appellant, who had also some in-
terest in the certificate, for the agreed sum of $20,000,
taking an assignment thereof in blank (to an unnamed as-
signee); that out of the agreed purchase price of the certi-

ficate of sale, Byers retained the $1,000, and at the same time entered into the agreement set forth; that afterwards the identity of the undisclosed principal for whom Byers was acting was disclosed to be respondent Godwin. The time for the redemption from sale by the execution debtors under the assigned certificate of sale expired on August 15, 1915. At the time of the sheriff's sale, and at the time of the transactions between these parties, there was a prior existing mortgage on the real estate securing a note of $40,000, held by the German Savings & Loan Society of San Francisco, California. This note was past due and the mortgage foreclosable. None of the parties to the agreement had the means to pay and satisfy it. Originally and until maturity this note bore interest at the rate of six per centum per annum, but after Patterson and appellant had obtained the certificate of sale, some arrangement was made whereby the mortgagee was paid interest at seven per cent, but no definite extension of time was granted by the mortgagee, and the mortgage was merely continuing by forbearance on its part. It seems that the annual interest charge was apportioned and payable, and was paid, in monthly payments.

After purchasing the certificate of sale and making the written agreement with appellant, Godwin attempted to secure an extension or renewal of the note and mortgage from the mortgagee, but was unsuccessful, the mortgagee refusing to grant such extension or renewal. He then borrowed the money from a bank by a personal loan, purchased the $40,000 mortgage, and procured the assignment of it and the note from the German Savings & Loan Society, payment of which seems to have been exacted to be made in San Francisco, as the company required interest to be paid to the date of its receipt of the money in San Francisco, some three or four days after the transmission of the money from Seattle. Godwin then negotiated a real estate loan from the Burlington Trust Company of New York upon the real

estate mentioned herein, together with some other real estate of his own, and thereby obtained the money with which to satisfy his personal loan from the bank which had been used to satisfy or purchase the former mortgage. In procuring the new loan, he expended for commissions $787.45, for examination of abstract of title, to the new mortgagee's attorneys, $50, and he had previously paid out to the former mortgagee, by way of the extra one per cent interest from the date of the agreement with appellant to July 20, when he purchased the former mortgage, $211.11; aggregating $1,048.56. The agreement involved here makes no mention of the extra interest at one per cent which appellant had agreed to pay to the mortgagee, and that mortgage on its face provided for interest only at six per cent instead of seven per cent. The $211.11 was, therefore, a bonus charge for the forbearance of the mortgagee for that period of time, and one which appellant had initiated and knew would be exacted.

On August 18, 1915, after the expiration of the time limit specified in the written agreement, appellant demanded of both respondents the payment of the $1,000 left in escrow with Byers, on the ground that the loan referred to in the agreement "was never extended or renewed, but that Mr. Godwin has paid off the mortgage by taking an assignment of the same." The foregoing quotation fully expresses appellant's contention here. After refusal by respondents to pay the $1,000, appellant procured an assignment to him from receiver Patterson and began his action to recover the money.

The trial judge thought that it was "manifest on the face of the contract that the parties contemplated and understood that the purchaser of appellant's certificate of sale (which was subject to the $40,000 mortgage) had to have a renewal of the loan; that he could not pay it"; and that "the spirit and intent was that the purchaser had to have it stayed off." The court also considered that one could renew

a loan which he owed one creditor with another creditor; that one could get an extension of an existing mortgage, or if not, could renew the loan with some other lender. Upon these views, the trial court refused the recovery to appellant.

We admit some difficulty in correctly interpreting the agreement. Strictly speaking, the trial judge's statement of the meaning of a renewal or an extension may not be correct. In general a renewal, as applied to promissory instruments, means "a change of something old for something new; as the renewal of a note." Bouvier's Law Dictionary. It has been defined as meaning the reestablishment of a particular contract for a longer period of time; to restore to its former condition an obligation on which the time of payment has been extended. *Kedey v. Petty*, 153 Ind. 179, 54 N. E. 798. And it has been said that:

"To renew, in its popular sense, is to refresh, revive or rehabilitate an expiring or declining subject, but is not appropriate to describe the making of a new contract or the creation of a new existence." *Carter v. Brooklyn Life Ins. Co.*, 110 N. Y. 15, 17 N. E. 396.

"Extension" has been defined as the granting of further time in which to do something which has been set down for a particular day; a postponement by agreement of the parties of the time set for acting; the allowance on the part of the creditor to a debtor of further time to pay a debt. Century Dictionary.

In general, these words apply to the particular debt and instruments between the same parties or their successors. But it has also been said that "renewal" means "the substitution of a new right or obligation for another of the same nature," and that "it is not a word of art; it has no legal or technical significance." Anderson's Law Dictionary. *Sponhaur v. Malloy*, 21 Ind. App. 287, 52 N. E. 245.

In *Lowry Nat. Bank v. Fickett*, 122 Ga. 489, 50 S. E. 396, it was held that:

"There may be a change of parties. There may be an increase of security, but there is no renewal unless the obligation is the same. What makes the renewal is an extension of time in which to discharge the obligation. If the obligation changes, there can be no renewal, because there can be no such thing as the re-establishment of an old obligation by the creation of a new obligation different in character."

Appellant would have the words "renewal" and "extension" applied strictly to the existing note and mortgage, as implying only that they were to be renewed and extended, and to nothing else. Since the words are not "words of art, and have no legal or technical significance," they may mean whatever the parties intended when contracting. Here there existed a prior and superior incumbrance securing an indebtedness of $40,000. It was past due and immediately enforceable. Neither party could then pay and discharge it. Neither party could be safe, and both might lose title to the real estate under the existing conditions. The appellant's assignor and himself sold their right, title and interest to respondents subject to the incumbrance of $40,000. One thousand dollars was set aside from the purchase price to be paid for renewing a debt and incumbrance of $40,000. It was assumed that the charges and expenses of re-securing, if possible, the existing loan would approximate $1,000, or that sum would not have been deducted from the purchase money. The new loan cost no more. Appellant lost nothing. Neither party had any interest whatever in securing a renewal to, or an extension by, the same incumbrancer. Such renewal to, or extension by, that incumbrancer had not been theretofore granted, and, therefore, in all probability would not be. Appellant and his assignor were not in a position to expect it. Nor could they either gain or lose by the making of a new loan by another. The new loan was for the same amount.

The language of the contract, construed in the light of all the existing conditions and the circumstances of the

parties, while not apt, did not require the reestablishment of the existing mortgage to the then mortgagee, or its extension of time of payment to the holder of the title. Obviously that was known to be fairly impossible of obtaining.

It is technically true, as asserted by appellant, that the purchase of the former mortgage by respondent Godwin constituted an extinguishment thereof. That, however, was merely a temporary expedient for the prevention of foreclosure and consequent loss of title. He merely proceeded with due business precaution, and at the same time with all due diligence, to protect his title. Had appellant and his assignor retained the sheriff's certificate of sale in themselves, they would no doubt have been compelled, if able, to proceed in the same way and take the same or similar steps to protect their interests.

All things considered, we conclude that the judgment of the superior court is right, and it is therefore affirmed.

ELLIS, C. J., MOUNT, FULLERTON, and PARKER, JJ., concur.