[No. 23576. Department Two. September 29, 1932.]

CLARE TOOLE, *Respondent and Cross-appellant,* v. NATIONAL LIFE INSURANCE COMPANY OF THE UNITED STATES OF AMERICA, *Appellant.*[1]

[1]Reported in 14 P. (2d) 468.

Samuel R. Stern and J. M. Schermer (Burton P. Sears, of counsel), for appellant.

O. C. Moore, for respondent and cross-appellant.

MAIN, J.—This action was brought to recover upon a life insurance policy which called for the payment of five thousand dollars in case of the death of the insured, and carried a rider providing for double indemnity in case of death by accident. The cause was tried to the court without a jury, and resulted in a judgment in favor of the plaintiff in the sum of $5,-488.05, but no recovery was allowed upon the double indemnity provision. The defendant appeals from the judgment against it in the amount named, and the plaintiff appeals because she was not allowed recovery upon the double indemnity.

The facts essential to be stated are these: May 15, 1924, the defendant issued and delivered to Robert L. Toole the insurance policy above mentioned, in which Clare Toole, the wife of the insured, was named as beneficiary. The policy called for the payment of a premium in the sum of $145.45 upon its issuance, and for the same amount annually thereafter, the payments becoming due on the 15th day of May each year.

When the May 15, 1927, payment became due, it was not paid, but the insured gave a promissory note in the sum of $236.55, payable on or before November 15th of that year. The note recited that it was given for the annual premium due May 15, 1927, and the

balance on an old note under the policy. It was pro-
vided in the note that it should be a lien on the policy,
and in the event that the policy lapsed, at the option
of the company it was ''to be deducted in event of
lapse of said policy, from the value, if any, applicable
to extended or paid-up insurance, as in said policy
provided.''

The policy provided that the insured had the right
at any time, in compliance with the rules of the com-
pany, by filing therewith a written request, to change
the beneficiary; that a grace of one month, not less
than thirty days, with interest, was to be allowed in
the payment of each premium after the first; that, at
any time while the policy was in force, the company
would advance, on proper assignment thereof, any
sum not exceeding the cash surrender value at the
end of the current policy year, less any outstanding
indebtedness on or secured by the policy and any un-
paid balance of the premium for the current policy
year; that failure to pay any such advancements or
loan, or pay interest thereon, should not avoid the
policy unless the total indebtedness thereon to the
company should equal or exceed the loan value of such
policy at the time of such failure, nor until one month,
not less than thirty days, ''after notice shall have been
mailed by the company to the last known address of
the insured and of the assignee, if any;'' that, after
the premiums had been paid for a period of three
years, in case of default in premium payments, the in-
sured was entitled

''. . . to have the policy automatically extended
in force from date of default, without the right to
loans, for its face amount less any indebtedness there-
on, for the number of years and complete months which
the cash surrender value of this policy at date of de-
fault, less any indebtedness thereon, will purchase, ap-

plied as a net single premium at the attained age of insured, . . . ;''

that the policy, together with the application therefor, "shall constitute the entire contract between the parties hereto;" and the further provision that

"This insurance is granted upon condition that all premiums be promptly paid when due, and failure to pay any premium, or any part thereof, when due, shall forfeit and cancel this contract and terminate all obligations of the company under this policy, except as herein otherwise provided . . . ''

The note mentioned was not paid when it became due, and the premium which was due on May 15, 1928, was not paid. The insured's death occurred on January 30, 1929. Subsequent to May 15, 1928, and prior to the death of the insured, the company repeatedly urged him to reinstate the insurance, and offered liberal terms of payment if he would undertake to do so.

May 15, 1928, the cash surrender value of the policy was $250.85, and the note and interest thereon at that time amounted to $250.74. The defendant applied the cash reserve upon the payment of the note and interest, which left a balance of only a few cents. Under the terms of the policy, if the defendant had no right to apply the cash surrender value in payment of the note, then such cash surrender value would extend the life of the policy beyond the date of the death of the insured.

After the insured's death, the present action was brought, as above mentioned, to recover upon the policy.

As stated in the plaintiff's brief, there is presented upon this appeal the single ultimate question "whether the policy issued May 24, 1924, was in force at the time of the assured's death on January 30, 1929." The answer to this question depends upon whether the de-

fendant had a right to contract with the insured subsequent to the issuance of the policy as to the manner in which the premiums might be paid, particularly the premium due May 15, 1927; and, if it had that right, could it deduct from the cash surrender value of the policy the amount coming to it upon the note which remained unpaid.

The right to extend the time of payment of a premium and take a note therefor would not avoid the policy, unless the extension of the time and the giving of the note conflicted with the terms of the policy or was violative of the statute. The policy, as above mentioned, provided that it should constitute the "entire contract" between the parties thereto. Rem. Comp. Stat., § 7226, which is one of the sections of the insurance code, provides that no insurance company doing business in this state shall make or permit any distinction or discrimination in favor of individuals, between insurants of the same class and equal expectation of life, and that the company shall not "make any contract of insurance or agreement as to such contract other than is plainly expressed in the policy issued thereon."

The general, if not universal, rule is that a note given for a premium when it becomes due is not violative of the contract provision or statute which provides that the policy shall constitute the entire contract between the parties, for the reason that neither the terms of the policy nor the statute prohibit the making of a supplementary or later modifying contract between the company and the insured not contemplated when the policy was issued. The policy in question expressly provided that the insurance was granted upon condition that all premiums be promptly paid when due. If the giving of the note was invalid, it would seem necessarily to follow that the extension of

time or the waiver of payment at the time stipulated was also void. In 3 Couch Cyclopedia of Insurance Law, p. 2155, it is said:

"Agreements to the effect that failure to meet, at maturity, a note given for a premium or assessment, will work a suspension or forfeiture of the policy, undoubtedly may be validly entered into, and become binding upon the parties and enforceable, unless waived; and provided, of course, they do not conflict with statutory law. Not only have such stipulations been universally treated as valid and reasonable, but they often have been explicitly so characterized. So, it is said that they are neither against public policy, unwise, illegal, nor unreasonable, and that it does not oppose any rule of law or public policy for the insurer to take advantage thereof."

In *Diehl v. American Life Ins. Co.,* 204 Iowa 706, 213 N. W. 753, 53 A. L. R. 1528, where substantially the same question was considered as here presented, it is said:

"The claimed invalidity of the condition of the extension is planted upon Code Supplement 1913, Sections 1782, 1783a, 1783c, Code of 1897, Section 1783; Acts of the Thirty-eighth General Assembly, Chapter 348, Section 7; Code of 1924, Sections 8666 *et seq.* These sections prohibit discrimination by life insurance companies, prohibit the making of special inducements not specified in the policy, prohibit the making of any contract other than as plainly expressed in the policy, and prohibit the use of any form of contract of insurance until a copy of it has been filed with and approved by the commissioner of insurance. Violation subjects the company to a forfeiture or penalty.

"The distinction or discrimination, the contract not expressed in the policy, the form not filed with the commissioner or approved by him, claimed by plaintiff, consists in the extension of time which is the very thing that the plaintiff relies upon to avoid the forfeiture. If plaintiff's position is correct, then the extension of time or the waiver of payment at the time

stipulated is void, within the principle of the cases. construing the statute prohibiting discrimination by carriers in interstate commerce. *Georgia, F. & A. R. Co. v. Blish Mill Co.*, 241 U. S. 190 [36 S. Ct. 541] (60 L. Ed. 948); *Keeney v. Chicago, B. & Q. R. Co.*, 183 Iowa 522 [167 N. W. 475]. The statute now under consideration does not in terms apply to or prohibit the making of supplementary or later modifying contracts between the company and the insured not contemplated when the policy was issued. We cannot conceive of its being against public policy or contrary to the terms or purpose of the statute to permit an insurance company to grant an extension to a policyholder for whom, through misfortune or otherwise, the making of prompt payment of premium at the stipulated time may be inconvenient or impossible. Such extensions, in many cases at least, save the insurance to the policyholder. They do not (ordinarily at least) injuriously affect other policyholders. Logically, if the conditions are void, it must be because the extension is void; for it is the extension, if anything, that discriminates. By means of the note, a supplementary contract is, in effect, entered into, to extend the time of payment of premium, and during the period of extension to continue the former contract in force. Though a new contract is thus made, it does not constitute a complete, independent, or distinct contract of insurance. It modifies as to one premium payment and continues the existing contract. The new contract is merely supplementary, and was not within the contemplation of the parties at the time the policy was issued. No discrimination was in view on either occasion. We perceive no reason for not permitting the company to grant an extension of time of payment of premium on terms that are mutually reasonable and not oppressive, or for punishing the company for aiding the insured by annulling fair, non-oppressive, and non-fraudulent conditions. The right to make such extensions has been recognized by this court. [Citing authorities.]"

Many other authorities might be cited, but the rule stated is the one universally applied in the Federal

courts and sustained by the decided weight of authority of the state courts. In the cases of *Coughlin v. Reliance Life Ins. Co.*, 161 Minn. 446, 201 N. W. 920, and *Ritter v. American Life Ins. Co.*, 48 S. D. 231, 203 N. W. 503, there is language which is not in harmony with the views hereinbefore expressed; but in each of those cases the facts were materially different from those here presented, in that the note given was broad enough to include an invasion of the policy contract. In *Gibson v. New York Life Ins. Co.*, 102 Wash. 180, 172 Pac. 920, there was a failure to comply with the express terms of the policy.

We see nothing in the insurance policy or the statutes of this state which makes void the extension of the time for the payment of the premium and the giving of a note therefor. If the parties had a right to extend the time and make the note, it would follow that they had a right to contract in the note as to how it should be paid in the event that the policy lapsed.

█ It is further contended that, since the plaintiff was named as beneficiary in the policy and it had been delivered into her possession, she had a vested right thereto, and for this reason the contract between the insured and the defendant was invalid as to her. In *Schade v. Western Union Life Ins. Co.*, 125 Wash. 200, 215 Pac. 521, it was held that a provision in a policy reserving to the assured the right to change the beneficiary was a valid provision, and was not in conflict with the statute relating to the rights of beneficiaries in life policies.

As above mentioned, the policy now before us contained a clause that the insured, at any time while the policy was in force, could change the beneficiary in accordance with the rules of the company, by filing a written request for the change desired. If the insured had the right to change the beneficiary, as was held

in the case cited, it follows that the plaintiff in this case did not have a vested interest therein which could not be contracted away by the insured.

The case of *In re Heilbron's Estate,* 14 Wash. 536, 45 Pac. 153, 35 L. R. A. 602, to the effect that a policy of life insurance and the money to become due under it belonged from the time the policy was issued to the beneficiary therein named, and that it was beyond the power of the insured to transfer to any other person the interest of such beneficiary, has no application to the present situation; because, in that case, the policy involved did not contain the provision with reference to the change of the beneficiary such as appears in the policy now before us.

■ There is also the contention that the defendant did not have a right to lapse or forfeit the policy without the giving of thirty days' notice. This contention is rested upon that provision in the policy which provides for cash loans; but the giving of the note for the premium which was not paid clearly did not come within the provision of the policy which covered the matter of cash loans based upon the surrender value thereof. That provision must be read in connection with the subsequent provision that the insurance is granted upon condition that

". . . all premiums be promptly paid when due, and failure to pay any premium, or any part thereof, when due, shall forfeit and cancel this contract and terminate all obligations of the company"

thereunder. A provision such as this makes time the essence of the contract, and if the premiums are not paid at the time stipulated in the policy, or within the thirty days' grace, the policy lapses. In *Klein v. Insurance Co.,* 104 U. S. 88, it was said:

"If the assured can neglect payment at maturity and yet suffer no loss or forfeiture, premiums will not be

punctually paid. The companies must have some efficient means of enforcing punctuality. Hence their contracts usually provide for the forfeiture of the policy upon default of prompt payment of the premiums. If they are not allowed to enforce this forfeiture they are deprived of the means which they have reserved by their contract of compelling the parties insured to meet their engagements. The provision, therefore, for the release of the company from liability on a failure of the insured to pay the premiums when due is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance, notwithstanding the default of the assured in making punctual payment of the premiums, is to destroy the very substance of the contract.''

But, assuming, without so deciding, that notice was necessary, as late as December 19, 1928, which was more than thirty days prior to the death of the insured, the company wrote a letter urging him not to abandon the insurance, and to make application for its reinstatement. The insured in that letter was informed that he was without the protection of the policy at the time. While this letter was not in form a notice of forfeiture, it informed the insured that the policy had lapsed.

The judgment will be reversed upon the defendant's appeal, and affirmed upon the plaintiff's appeal.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.