[No. 7337–1–I.   Division One.   July 21, 1980.]

THE CONTINENTAL INSURANCE COMPANY, *Appellant,* v.
PACCAR, INC., *Respondent.*

*Lee A. Holley,* for appellant.

*William R. Hickman* and *Reed, McClure, Moceri & Thonn,* for respondent.

CALLOW, C.J.—The Continental Insurance Company appeals from a judgment in favor of Paccar, Inc., denying Continental's claim for additional insurance premiums from Paccar and decreeing that Paccar's self–retained aggregate limit of liability under its insurance policy with Continental should be prorated.

Paccar, Inc., is an international manufacturer of heavy duty trucks, tractors and off–highway equipment. While Paccar maintains its own insurance department, Marsh & McLennan, Inc., an insurance brokerage, worked with Paccar for the purpose of securing Paccar's insurance at all times relevant to this case. Marsh & McLennan acted also as Continental's designated agent during the same period. In 1974, Continental issued Paccar an insurance policy that commenced March 1, 1974.

The insurance policy states the "Policy Period" to be "[f]rom March 1, 1974 . . . until cancelled." Under the policy, Paccar is basically afforded $1,000,000 in coverage for each occurrence or claim, and $1,000,000 aggregate coverage

in seven separate areas of potential liability. Garage keeper's liability is stated as $300,000 each location. These limits of liability coverage apply "in excess of the self–retained limit of $50,000, subject to an annual retained aggregate limit of $500,000." The limits of liability section of the policy further provides:

> Provision for self–insured retention. The insurance provided by this policy shall apply in excess of the first $50,000 of loss for any one occurrence, accident or cause, including supplementary payments and adjustment expenses in connection therewith, subject to an annual aggregate of $500,000 for all self–retained losses.
>
> . . .
> . . . Each aggregate limit of liability afforded herein shall apply separately to each consecutive annual period of the policy.

General Condition 1 provides:

> 1. Premium. All premiums for this policy shall be computed annually in accordance with the terms of the composite rate endorsement attached hereon.
>
> The named insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

Additional general conditions of the policy provide as follows:

> 8. Changes. Notice to any agent of knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; *nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.*

(Italics ours.)

> 11. Cancellation. . . . This policy may be cancelled by the company by mailing to the insured . . . written notice stating when not less than ten days thereafter in the case of nonpayment of premium and ninety days in all other cases such cancellation shall be effective. . . . The time of surrender or the effective date and hour of

cancellation stated in the notice shall become the end of the policy period. . . .

If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. . . .

General Condition 14 and Special Condition 3 contain an integration clause by which the parties agree that the policy embodies the parties' whole agreement.

In accordance with Condition 1 that the policy premium be computed annually in accordance with the terms of an attached composite rate endorsement, the policy originally contained a page captioned "Basis of Premium Composite Rate" and another page captioned "Installment Endorsement." By a subsequent endorsement dated April 21, 1975, and effective March 1, 1975, the policy provides:

BASIS OF PREMIUM
COMPOSITE RATE

The composite rate will be based upon net sales for the United States and Canada as contained in the annual statement as presented to the stockholders by PACCAR Inc.

The remainder of the endorsement provides for a composite rate of $.2612 per $1,000 of net sales for the first $760,853,000 in sales, and a composite rate of $.2267 per $1,000 of net sales in excess of $760,853,000. The accompanying "Installment Endorsement," also dated April 21 and effective March 1, 1975, specifies the number and amount of premium payments to be made up to and including February 1, 1976.

In the fall of 1975, the parties began discussing policy changes. On February 24, 1976, the Seattle manager for Continental, Mr. Charles Kee, sent a letter to Mr. Richard Mattei, the manager of Marsh & McLennan's casualty marketing department. The letter states:

At your request, I will extend the rates and conditions contained in the above policy for 30 days beyond the anniversary date.

I am sorry that we have been unable to provide you with a renewal premium, but I do expect a decision on this matter within the next few days.

On March 2, Continental proposed a premium of $1,200,000 for $1,000,000 in coverage excess of a $100,000 per–occurrence deductible with no annual self–retained aggregate. Paccar did not agree to this proposal. Negotiations continued.

On March 22, 1976, Mr. Kee sent the vice president of Marsh & McLennan a letter stating:

This will confirm our conversation of Friday, March 19, in connection with the subject matter.

I authorized a second 30–day extension because of the size and complexity attendant to the remarketing of this account.

I would appreciate your confirming to me that you and the client understand that should we be requested to extend coverage beyond the 60 days now authorized, it will be done at current quoted rates retroactive to March 1, 1976.

As negotiations progressed it became apparent that an agreement would not be reached. No one made a subsequent request for an extension of coverage. By April 29 the parties realized that no agreement could be reached on any of the proposed changes. Mr. Kee informed Marsh & McLennan that in the absence of advance payment of premiums based on the rates insisted upon by Continental, it would exercise its 10–day cancellation option for nonpayment of premium. Mr. Kee recommended this policy to the home office, but it was rejected. Continental sent out 90–day notices of cancellation on April 30. The effective date of the policy cancellation was July 29, 1976.

On July 5, 1977, Continental commenced suit against Paccar, alleging that Paccar owed Continental an additional $211,690.62 in premiums for the period May 1 to July 29, 1976. The theory underlying Continental's claim was that the Paccar policy has always been an annual policy, as revealed by the composite rate basis method of computing the annual premium and by parol evidence of the parties'

intent; that premium determinations were subject to agreement and adjustment on an annual basis; and that for the period May 1 to July 29, 1976, the premium rate was $1.475 per $1,000 of net sales because exhibit 59, the letter of March 2, 1976, represented a new premium rate agreement for the period commencing May 1, 1976. Continental chose not to claim additional premiums for the period March 1 to May 1, 1976.

Paccar replied that the composite rate endorsement of April 21, 1975, applied continuously, as did coverage, because the policy was continuous and the endorsement bore no expiration date. In addition, Paccar prayed for declaratory relief that the aggregate self–retained limit of $500,000 be prorated to $205,000 for the period of March 1 to July 29, 1976. Continental replied that this prayer for relief should be denied.

Following a trial before the court, the trial court entered findings of fact, conclusions of law and judgment on January 8, 1978. The trial court determined that the parties' insurance policy unambiguously provided coverage "until cancelled"; that the premium basis for such coverage was as set forth in the April 21, 1975, policy endorsement; and that the effective date of cancellation was July 29, 1976. The court concluded that no agreement or estoppel existed to warrant modifying the terms of the policy. The court further determined that the parties' correspondence contained "sloppy language" and that, notwithstanding the actual language used, the letters of February 24 and March 22, 1976, represented nothing more than an extension of the period during which Continental would not cancel the policy. In response to Paccar's declaratory prayer, the court found that cancellation at a time other than the anniversary date created an ambiguity as to whether the annual self–retained aggregate limit of $500,000 should be prorated, and concluded that it should be prorated since Continental had created the ambiguity. The court refused to prorate Continental's limits of liability.

Continental appeals, raising three primary issues:

1. Did the trial court err in concluding that the policy period for coverage under the insurance policy was unambiguous and continuous, with the result that the premium rates agreed upon in the April 21, 1975, endorsement apply to the coverage afforded from May 1, 1976, to July 29, 1976?

2. Did the trial court err in "finding" that cancellation of the policy created an ambiguity as to the annual self–retained aggregate limit of $500,000, such that the ambiguity should be resolved against Continental so as to prorate the self–retained aggregate?

3. Did the trial court err in concluding that Paccar was not estopped to assert continuous coverage under the policy?

> *The trial court did not err in concluding that the policy period for coverage under the insurance policy was unambiguous and continuous, with the result that the premium rates agreed upon in the April 21, 1975, endorsement apply to the coverage afforded from May 1, 1976, to July 29, 1976.*

Continental first contends that the trial court erred in interpreting Mr. Kee's letters of February 24, 1976, and March 22, 1976, and the insurance policy so as to apply the premium rates agreed upon in the April 21, 1975, endorsement to the coverage afforded after May 1, 1976. It specifically contends that the trial court erred in finding (1) as to Mr. Kee's letters, that "Continental extended the time within which it would not cancel the policy by thirty days notwithstanding the actual language used"; (2) that no request for an extension of coverage beyond the second 30–day extension was asked for; (3) that by April 29, 1976, both parties realized they would be unable to agree upon the proposed changes; and (4) that the parties' correspondence contained sloppy language. It assigns error to the trial court's conclusions (1) that the "Policy Period" provision is unambiguous; (2) that the discussion of policy changes never resulted in an agreement to change the

policy; and (3) that Continental's claim for additional premiums should be dismissed with prejudice. Finally, it contends the trial court erred in not allowing in evidence exhibits and other parol evidence that might have a bearing on the parties' interpretation of the policy.

In support of its claims, Continental contends that the insurance policy, properly integrated with other expressions of the parties' intent, either reveals initially contemplated annual renewal negotiations on its face or presents sufficient indicia of ambiguity to allow parol proof of the parties' actual intent relative to the policy period. In support of this contention, it points to prior Paccar policies, the parties' prior annual negotiations of composite rates, the policy requirement that Paccar furnish its annual records to Continental, the letters written by Mr. Kee, the insurance policy, and a Paccar–Marsh & McLennan agreement on yearly commissions. Therefore, Continental argues, the court should have given effect to the parties' intention, *e.g., Grant County Constructors v. E.V. Lane Corp.,* 77 Wn.2d 110, 120, 459 P.2d 947 (1969), by fairly construing the policy against Paccar as its preparer, *Wilkins v. Grays Harbor Community Hosp.,* 71 Wn.2d 178, 427 P.2d 716 (1967), and in light of the parties' business practices and custom, the parties' own interpretation, and all the circumstances surrounding the policy's execution and application, *e.g., Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 468 P.2d 666 (1970), and *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 510 P.2d 221 (1973), to allow Continental reasonable compensation for the period May 1 to July 29, 1976, citing *Rutcosky v. Tracy,* 89 Wn.2d 606, 574 P.2d 382, *cert. denied,* 439 U.S. 930, 58 L. Ed. 2d 323, 99 S. Ct. 317 (1978); *Jones v. Brisbin,* 41 Wn.2d 167, 247 P.2d 891 (1952).

The parol evidence rule provides that all prior negotiations, conversations and parol agreements merge into a final, unambiguous, integrated writing, and parol or extrinsic evidence is not admissible to add to, subtract from, vary, or contradict the terms of the instrument. *Heath*

*Northwest, Inc. v. Peterson,* 67 Wn.2d 582, 408 P.2d 896 (1965). The parol evidence rule, however, should not be applied to bar proof that might vary or contradict a written agreement unless and until the court has first determined as a matter of fact that the parties intended the written agreement to be a complete integration of the parties' agreement. *Diel v. Beekman,* 1 Wn. App. 874, 465 P.2d 212 (1970). As discussed by *Beekman,* the duty to establish that the written contract encompasses the total intent of the parties is premised upon the right to make contracts written, oral, or a combination of both. *Diel v. Beekman, supra* at 880. *See also Barber v. Rochester,* 52 Wn.2d 691, 698, 328 P.2d 711 (1958); *University Properties, Inc. v. Moss,* 63 Wn.2d 619, 621, 388 P.2d 543 (1964). The partial integration exception to the parol evidence rule is subject to the qualification

> that where a written agreement *purports* to cover the entire subject matter with respect to which the parties are contracting, and fraud or mutual mistake is not claimed, evidence of a contemporaneous or prior oral agreement contradicting or altering the terms of the writing is inadmissible.

*Buyken v. Ertner,* 33 Wn.2d 334, 345, 205 P.2d 628 (1949). *Lynch v. Higley,* 8 Wn. App. 903, 908–09, 510 P.2d 663 (1973), allows parol evidence to show whether the agreement purporting to be fully integrated is in fact fully or partially integrated or was executed as part of a transaction of which a collateral agreement was a part.

In any event, the parol evidence rule does not prevent proof by parol evidence of an agreement made subsequent to the execution of the written agreement even if it adds to, changes, modifies, or qualifies the terms of the written agreement. The subsequent agreement may be express or implied. *Simonson v. "U" Dist. Office Bldg. Corp.,* 70 Wn.2d 35, 40–41, 422 P.2d 1 (1966); *Buyken v. Ertner, supra* at 350.

The insurance policy declares that Paccar agrees with Continental that the policy embodies the parties' entire

agreement and that no terms of the policy shall be waived or changed except by endorsement issued to form a part of the policy. The agreement thus purports to cover the entire agreement, and parol evidence bearing on prior or contemporaneous agreements or understandings was properly excluded under the rule of *Buyken v. Ertner, supra,* insofar as the partial integration exception is concerned. Continental's argument as to considering prior and contemporaneous agreements and the circumstances leading up to and surrounding the policy's execution is met by the bar of RCW 48.18.190, which provides:

> Policy must contain entire contract. No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy.

Expressive of the same public policy, RCW 48.18.520 provides that every insurance contract

> be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy.

Evidence of prior or contemporaneous agreements of the parties will not be allowed by RCW 48.18.190 to modify or vary the terms of an unambiguous contract. *Safeco Ins. Co. v. Dairyland Mut. Ins. Co.,* 74 Wn.2d 669, 446 P.2d 568 (1968); *National Indem. Co. v. Smith–Gandy, Inc.,* 50 Wn.2d 124, 309 P.2d 742 (1957); *accord, Industrial Indem. Co. v. Aetna Cas. & Sur. Co.,* 465 F.2d 934 (9th Cir. 1972); *MFA Life Ins. Co. v. Huey,* 347 So. 2d 63 (La. App. 1977). As to subsequent agreements, *compare Toole v. National Life Ins. Co. of United States,* 169 Wash. 627, 631, 14 P.2d 468 (1932), *with West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 4 Wn. App. 221, 223, 480 P.2d 537, *rev'd on other grounds,* 80 Wn.2d 38, 491 P.2d 641 (1971).

The parol evidence rule permits the introduction of evidence such as custom and usage or surrounding circumstances to resolve an ambiguity in a fully integrated agreement. *Point Adams Packing Co. v. Dauberspeck,* 21 Wn.

App. 250, 584 P.2d 479 (1978); *Lynch v. Higley, supra* at 910. If the terms of the policy taken as a whole are plain and unambiguous, the meaning of the contract must be deduced from its language alone. *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 256, 510 P.2d 221 (1973); *Boeing Airplane Co. v. Firemen's Fund Indem. Co.,* 44 Wn.2d 488, 268 P.2d 654, 45 A.L.R.2d 984 (1954); *S.L. Rowland Constr. Co. v. Beall Pipe & Tank Corp.,* 14 Wn. App. 297, 310, 540 P.2d 912 (1975); *Pine Corp. v. Richardson,* 12 Wn. App. 459, 469, 530 P.2d 696 (1975).

"Cancellation" in insurance law ordinarily means termination of a policy by act of one of the parties prior to expiration of the policy period; "expiration" means that the policy has reached the end of the term for which it was written. *Waynesville Sec. Bank v. Stuyvesant Ins. Co.,* 499 S.W.2d 218, 60 A.L.R.3d 157 (Mo. App. 1973); *Clauson v. Industrial Indem. Co.,* 241 Cal. App. 2d 440, 50 Cal. Rptr. 615 (1966). Here, however, cancellation and expiration are synonymous under the parties' policy. The trial court found that the policy period "[f]rom March 1, 1974 . . . until cancelled" meant exactly that, and that the policy thereby continued until cancelled. Continental does not challenge the court's finding; hence, it is a verity on appeal. *Jordin v. Vauthiers,* 89 Wn.2d 725, 728, 575 P.2d 709 (1978). Consistent with the policy period statement, the general conditions state that "[t]he time of surrender or the effective date and hour of cancellation stated in the notice [of cancellation] shall become the end of the policy period." Nothing in the remainder of the policy renders these provisions ambiguous. The policy states that premiums "shall be computed annually in accordance with the terms of the composite rate endorsement attached hereon," and the endorsement specifies the rate to be applied to determine the annual premium. The endorsement bears a starting date but no ending date. While the previous yearly endorsements indicate a course of renegotiating premiums on an annual basis, neither the previous endorsements nor

any other provision of the policy requires an annual renegotiation. The endorsements do not change the policy period. *See Anchor Cas. Co. v. Inland Motor Freight, Inc.,* 97 F. Supp. 841 (E.D. Wash. 1951), *aff'd,* 198 F.2d 268 (9th Cir. 1952). The trial court correctly concluded that the "Policy Period" provision of the policy is unambiguous.

It follows from the court's conclusion that the policy period is unambiguous, that it was proper to exclude the proffered exhibits and other parol evidence offered by Continental for the purpose of proving that the parties had expressly or impliedly agreed ab initio that the policy required an annual renegotiation of the premium in order to continue coverage. This evidence was inadmissible under the partial integration exception to the parol evidence rule and could not have been used to construe the "Policy Period" provision because it is unambiguous.

As to the letters of Mr. Kee, the words "renew" and "extend" are neither words of art nor words that have acquired a fixed legal or technical significance; they may mean whatever the parties intended them to mean. *Guie v. Byers,* 95 Wash. 492, 497, 164 P. 75 (1917). A number of disparate inferences concerning the parties' intent could have been drawn from the evidence. The trial court's correct conclusion that the policy is unambiguous as to duration, together with testimony that the policy was regarded as continuous and that the parties' correspondence contained sloppy language, provides substantial evidence to support the court's mixed finding and conclusion that Continental's "extensions" related to the time within which it would not cancel the policy. Further, the 1975 policy endorsement is dated April 21, 1975, yet there is no indication in the record that the parties treated the policy as having automatically expired on March 1, 1975, or that they considered the endorsement of April 21 as a "renewal." Likewise, the trial court might have attached significance to Continental's election to send out cancellation notices instead of standing on its position that the policy expired upon the parties' failure to agree upon a new

premium. The trial court's determination is supported by substantial evidence and we agree with the conclusion reached. *See Lehmann v. Board of Trustees,* 89 Wn.2d 874, 878, 576 P.2d 397 (1978).

■ The remainder of the findings challenged by Continental are supported by substantial evidence. *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 437, 545 P.2d 1193 (1976). The conclusions challenged by Continental are supported by the findings. *E.g., Sylvester v. Imhoff,* 81 Wn.2d 637, 503 P.2d 734 (1972).

> *The trial court erroneously concluded that cancellation of the policy created an ambiguity as to the annual self–retained aggregate limit of $500,000, and that the ambiguity should be resolved against Continental by prorating the self–retained aggregate.*

Continental next contends that the trial court erred in "finding" that cancellation of the policy at a time other than the anniversary date created an ambiguity as to the annual self–retained aggregate limit of $500,000. It argues that this is actually an erroneous conclusion of law, as is the trial court's conclusion that Paccar is entitled to have the self–retained aggregate prorated for the period of March 1, 1976, to July 29, 1976. It argues that the court's conclusions are precluded by (a) the plain language and history of the standard cancellation clause; (b) Paccar's attempt during negotiations to insert a pro rata clause in the policy, thereby impliedly acknowledging that the policy did not then provide for prorating the deductible; (c) the rule that ambiguity must be read against the drafter, Paccar; (d) the rule that a prescribed remedy is the sole remedy, *S.L. Rowland Constr. Co. v. Beall Pipe & Tank Corp., supra*; and (e) the court's failure to prorate coverage, which is also "annual" and should be given the same meaning and construction, *Holter v. National Union Fire Ins. Co.,* 1 Wn. App. 46, 459 P.2d 61 (1969).

Whether the self–retained aggregate should be prorated was presented to the trial court as an issue of law. The trial

court's determination that Continental's cancellation created an ambiguity is a conclusion of law. *Murray v. Western Pac. Ins. Co.*, 2 Wn. App. 985, 992–93, 472 P.2d 611 (1970). We will treat it as such. *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197, 584 P.2d 968 (1978).

In order for the trial court to have concluded that an ambiguity was created by Continental's cancellation, it was necessary that the policy be on its face fairly susceptible of two different interpretations, both of which were reasonable. *Morgan v. Prudential Ins. Co. of America, supra.* The policy is subject to only one reasonable interpretation.

The insurance policy basically provides $1,000,000 in coverage for each occurrence and $1,000,000 aggregate liability coverage in seven different areas, subject to the annual self–retained aggregate limit of $500,000. Deductibles applicable to total losses in a year are normally called "aggregate deductibles." C. Williams & R. Heins, *Risk Management and Insurance* 280 (2d ed. 1971). In case of cancellation by the insurer, the policy expressly provides for prorating the premiums paid for coverage. "Coverage" means the "assumption of risk of occurrence of the event insured against before its occurrence." *Ryan v. Cuna Mut. Ins. Soc'y,* 84 Wn.2d 612, 615, 529 P.2d 7 (1974). An essential component of the coverage or protection afforded Paccar and the risk assumed by Continental is the self–retained aggregate limit. The premium and rate structure are based upon exactly this coverage. While the insured primarily undertakes self–retention for the purpose of net financial gain by trading the retention for a credit in the rate structure and premium, the insurer's purpose is to relieve it of any liability in the category of sure losses. *See generally* H. Denenberg, R. Eilers, J. Melone, R. Zelten, *Risk and Insurance* 464 (2d ed. 1974); R. Goshay, *Corporate Self–Insurance and Risk Retention Plans* 165–67 (1964); M. Greene, *Risk and Insurance* 94, 215 (3d ed. 1973); E. Siver, *Handbook of Commercial Property and Casualty Insurance* 268 (1972).

■ Cancellation of a policy does not affect a claim or occurrence that has already arisen under its coverage. *Insurance Co. of N. America v. United States*, 159 F.2d 699 (4th Cir. 1947); *Militello v. Bankers Life & Cas. Co.*, 141 So. 2d 454 (La. App. 1962). Hence, Paccar was afforded full "coverage" at any one time up to the maximum policy limits, subject to the fulfillment of the self–retained aggregate limit. It received the benefit of its bargain.

■ By ruling that the self–retained aggregate should be prorated, the trial court rewrote a material feature of the parties' bargain solely in favor of Paccar. It increased the risk or units of exposure assumed by Continental, thereby expanding the coverage afforded Paccar without a naturally corresponding increase in the premium. A court should not make a different contract for the parties under the guise of construing the contract. *Hodges v. Mutual Benefit Health & Accident Ass'n of Omaha*, 15 Wn.2d 699, 131 P.2d 937 (1942); *Jarstad v. Tacoma Outdoor Recreation, Inc.*, 10 Wn. App. 551, 519 P.2d 278 (1974). The trial court should have given the parties' agreement a practical and reasonable, rather than literal, interpretation. *Morgan v. Prudential Ins. Co. of America, supra* at 434. We find that the parties intended the prescribed remedy—prorating of the premium—as the sole remedy in case of cancellation. *See generally S.L. Rowland Constr. Co. v. Beall Pipe & Tank Corp.*, 14 Wn. App. 297, 309, 540 P.2d 912 (1975). In the absence of any question of fact, the only practical and reasonable interpretation of the parties' policy is that the self–retained aggregate of liability is not subject to being prorated in case of cancellation. We hold that the trial court erred in concluding to the contrary.

> *The trial court correctly concluded that Paccar was not estopped to assert continuous coverage under the policy.*

Continental next assigns error to the trial court's "findings" that neither party misled the other, that the cancellation provisions were known to both parties, and that no

deception was practiced by the parties. It contends that these are actually erroneous conclusions of law. Continental also assigns error to the court's conclusion that no action or lack of action by either party created an estoppel. Continental's argument in support of these contentions is that Paccar's purported outward acquiescence regarding the necessity of annual negotiations as a condition precedent to policy continuation caused Continental to defer sending a 90–day cancellation notice earlier, thereby creating an estoppel, citing, *e.g., Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964); *Hennessy v. Vanderhoef,* 1 Wn. App. 257, 261, 461 P.2d 581 (1969).

The trial court's "findings" that no deception was practiced and that neither party was misled represent mixed questions of law and fact since they constitute inferences drawn from the facts. *See Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 283, 525 P.2d 774 (1974). Whether the parties knew of the cancellation provisions presents a question of fact. In both cases, the trial court's determinations are supported by substantial evidence.

Employees of Paccar and Marsh & McLennan testified that they understood the policy to be continuous and that the policy did not expire on March 1. Joe Downs of Paccar testified that under these circumstances his impression from the letters of Mr. Kee was that they did not change anything but merely created a "holding pattern" during negotiations. Ronald Hoel of Paccar testified that he thought they related to prorating the aggregate deductible, a subject then under negotiation. No one testified that Continental told Paccar during negotiations that the policy had an expiration date of March 1. Employees of both parties testified that they were aware of the policy's cancellation provisions, and it is to be presumed that Continental knew the terms of the policy, *Fanning v. Guardian Life Ins. Co. of America,* 59 Wn.2d 101, 104, 366 P.2d 207 (1961). Given Paccar's understanding of the policy, Continental's unexpressed subjective intent that the policy

expired on March 1, and the trial court's finding that the letters of Mr. Kee created a noncancellable period, it is reasonable to conclude that Paccar did nothing to deceive or mislead Continental and that Continental was not misled. The trial court's determinations are supported by substantial evidence. *E.g., Morgan v. Prudential Ins. Co. of America, supra* at 437.

Equitable estoppel requires (1) an admission, statement, or act inconsistent with a claim later asserted by the party, (2) reasonable reliance thereon by the other party, and (3) resultant injury or detriment to the second party. *Harbor Air Serv., Inc. v. Board of Tax Appeals,* 88 Wn.2d 359, 366–67, 560 P.2d 1145 (1977); *Marsh v. General Adjustment Bureau, Inc.,* 22 Wn. App. 933, 592 P.2d 676 (1979). The findings support the conclusion that no action or lack of action by Paccar during the negotiations created an estoppel. We uphold this conclusion. *State Bar Ass'n v. Great Western Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 53, 586 P.2d 870 (1978).

Continental also contends that the trial court's failure to find that Marsh & McLennan acted as Paccar's agent is an error of law under the undisputed facts. This contention is neither accompanied by any citation of authority nor any argument as to what, if any, authority Marsh & McLennan was invested with and will not be considered. *E.g., Finney v. Farmers Ins. Co.,* 92 Wn.2d 748, 750, 600 P.2d 1272 (1979).

The final assignment of error is directed to the pretrial curtailment of discovery. Continental's sole argument is its statement that hundreds of unobtained documents "were all relevant discovery material." Absent argument as to how discretion was abused and what the materials were relevant to, we decline to consider this claim of error. *See Weber v. Biddle,* 72 Wn.2d 22, 29, 431 P.2d 705 (1967); *Rice v. Life Ins. Co. of North America,* 25 Wn. App. 479, 485, 609 P.2d 1387 (1980).

The judgment is affirmed insofar as it dismisses Continental's claim for additional premiums. The portion

of the judgment granting Paccar's declaratory prayer for prorating the self–retained aggregate is reversed and the judgment is modified to deny prorating of the self–retained aggregate.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied October 7, 1980.

Review granted by Supreme Court January 19, 1981.